# Richmond.

## JAMES T. STEVENSON V. E. SPIVEY.

January 19, 1922.

Absent, Saunders, J.

1. BUILDING RESTRICTIONS—*Part of General Scheme—Covenant or Restriction Running with the Land.—Subsequent Deeds Not Containing the Restriction.*—Where a building restriction (*e. g.,* establishing a building line) in a deed from a land company to a vendee of a lot is inserted in conformity with and as a part of the execution of a general plan for the development of a certain known and well-defined part of the property of which the lot granted was a part, this general scheme being intended for the benefit of all the lots in that territory, the intention being to mutually benefit by the general scheme the lots sold as well as those retained by the grantor, and this intention actuating both the grantor and the grantee, the covenant or restriction runs with the land and binds the owner of the lot, even though subsequent deeds through which he derived title contained no such restriction.

2. BUILDING RESTRICTIONS—*Enforcement in Equity—Restrictions Not Favored—Burden of Proof.*—Courts of equity will enforce restrictive covenants in conveyances of real estate where the intention of the parties is clear in creating them, and the restrictions are reasonable. But they are not favored, and will not be aided or extended by implication. The burden rests upon the person relying on such a covenant to bring himself within its terms. These principles apply with especial force to persons who are not parties to the instrument containing the restriction.

3. BUILDING RESTRICTIONS—*Right of Subsequent Grantees of Grantor to Enforce.*—In order for a building restriction to operate as between subsequent grantees of different adjacent lots or parcels of the same original tract, it must appear from the instrument expressly, or by a fair interpretation thereof, that it was inserted for that purpose; otherwise it will be assumed that it was intended by the parties to the original deed to inure only to the benefit of the grantor, or his heirs and assigns.

4. BUILDING RESTRICTIONS—*Method of Establishing a General Scheme*

—*Building Line.*—The natural method for a landowner to follow in establishing and evidencing a general building line is to make some clear and definite record thereof by indorsement on the plat of the property, or by indicating a building line thereon, or by express recognition and provision in the several deeds to the purchasers.

5. BUILDING RESTRICTIONS—*Right of Vendees to Enforce Restriction.*—The mere adoption and existence of a general practice or custom, whereby the owner includes in each of his conveyances for lots a uniform building restriction, is not in itself and alone sufficient to give the various vendees the right to enforce the restrictive covenant *inter sese.* That will depend upon the intention of the grantor, and there must be affirmative and preponderating evidence, either by express provisions of the deeds, indorsement on the plat, or satisfactory proof, to show that the purpose of the plan was to establish a mutuality of covenant based upon a contemplated mutual benefit, and not merely a personal covenant with the grantor to be enforced or waived by him according to his interest or pleasure.

6. BUILDING RESTRICTIONS—*Establishment of General Building Scheme—Case at Bar.*—In the instant case, it did not appear that the land company by any corporate action ever fixed upon a definite and uniform building scheme, nor is anything of that sort indicated upon either of the two plats which it recorded, and there is nothing in any of the deeds to the separate lots to suggest that the building restriction was intended otherwise than for the benefit of the grantor. The company's dealing with its property was inconsistent with and repelled the claim that there was a general scheme on the part of the company intended for the benefit of all the lots.

*Held:* That the vendee of a lot from the company could not enforce a restriction as against a grantee from a prior purchaser whose deed contained the restriction.

Appeal from a decree of the Hustings Court of the city of Portsmouth. Decree for defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Mann & Tyler,* for the appellant.

*J. Edward Cole,* for the appellee.

KELLY, P., delivered the opinion of the court.

This is an injunction suit brought by Stevenson against Spivey to restrain the latter from violating a building restriction contained in a deed from one of his remote grantors. The decree appealed from denied the relief prayed for, and Stevenson assigns error.

By deed dated June 12, 1901, the Port Norfolk Land Company conveyed to one T. V. Owens a certain lot designated, on one of that company's recorded plats, as No. 443. Immediately following the granting clause and the covenants of title, the deed contained this sentence: "No building to be erected within twenty-five (25) feet of the front line of said lot." By three successive mesne conveyances, the last of which was dated July 13, 1914, this lot passed to and became the property of the defendant, Spivey. Neither of the intermediate conveyances contained any building restriction whatever, or any reference to any such restriction in the first deed.

By deed of May 11, 1905, the said Port Norfolk Land Company conveyed to complainant, James T. Stevenson, lot No. 445, as designated on the plat aforesaid. This deed contained the same building restriction which was embodied in the conveyance from the land company to Stevenson, to-wit.' "No building to be erected within twenty-five (25) feet of the front line of said lot."

Lots 443 and 445 each has a frontage of forty feet on Maryland avenue, and each runs back between parallel lines a depth of 140 feet. Between these two lots is lot 444, fronting on the same street, being of the same size and dimensions as each of the other two; and immediately adjacent to lot 445 on the other side is lot 446 of like frontage, size and dimensions. Lot 444 is owned by Spivey, and lot 446 by Stevenson. Lot 444, acquired by Spivey in the same deed with lot 443, was conveyed to Spivey's predecessor in title

by the Port Norfolk Land Company without any building restriction, and no such restriction appeared in any subsequent conveyance thereto. Lot 446, owned by Stevenson, was originally conveyed to one of his predecessors in title without restriction.

Stevenson resides on lot 445, Spivey's intervening lot 444 is vacant, and he resides on lot 443, whereon he has a combined dwelling and storehouse, and he is now proposing to extend the front of his storehouse practically up to the front line of the lot. This will contravene the terms of the building restriction in the original deed from the land company and entitles the complainant to an injunction, provided the defendant is bound by that restriction. *Spilling* v. *Hutcheson,* 111 Va. 179, 68 S. E. 250.

[1] The first proposition advanced by the appellant, and the one chiefly relied upon here as a ground for a reversal of the decree of the lower court, is that the restriction in the deed from the land company to Owens was inserted in conformity with and as a part of the execution of a general plan for the development of a certain known and well-defined part of the property of which lot 443 was a part, this general scheme being intended for the benefit of all the lots in that territory, those sold as well as those retained by the company, and that, therefore, the covenant or restriction runs with the land and binds the lot owned by Spivey, even though the subsequent deeds through which he derived title contained no such restriction. With the understanding that this contention distinctly embraces the idea of an intention to mutually benefit by the general scheme alleged, the lots sold as well as those retained by the grantor, and that this intention actuated both the grantor and the grantee, the legal proposition here relied upon by the appellant is well settled, was expressly recognized and approved by the lower court, and is not challenged by the appellee. 2 Min. Real Prop., sec. 1119, p. 1215; Graves' Notes on Real

Prop., sec. 262, and note; 5 Am. & Eng. Ency. L. (2d ed.), p. 13; *Korn* v. *Campbell,* 192 N. Y. 490, 85 N. E. 687, 37 L. R. A. (N. S.) 1, 3, 127 Am. St. Rep. 925; Note, 37 L. R. A. (N. S.) 12, 27. In these authorities, and in the numberless others therein cited, will be found a full treatment of the reasons underlying the doctrine, and many learned discussions of the subject, involving much nicety of distinction in individual cases. It would be vain to undertake to review these authorities. The general principles applicable to this case are settled, and we content ourselves by the mere citation of some of the leading authorities on the subject. The sole point of controversy upon this branch of the case is whether the complainant has borne the burden of establishing by satisfactory and sufficient evidence the fact that the restriction in the original deed for lot 443 was inserted therein as a part of the alleged general plan.

The evidence is quite voluminous, and a detailed recital of it would be cumbersome and unprofitable. The learned judge of the lower court, as appears from his written opinion, gave a patient and laborious consideration to the testimony of the witnesses, and to the deeds, plats and other documentary evidence throwing light on the question of the existence of the alleged general plan, and reached the conclusion that the proof was insufficient to establish the contention of the complainant with respect thereto. In this conclusion we concur.

[2] Courts of equity will enforce restrictive covenants in conveyances of real estate where the intention of the parties is clear in creating them, and the restrictions are reasonable. But they are not favored, and will not be aided or extended by implication. See *Hutchinson* v. *Ulrich,* 145 Ill. 336, 34 N. E. 556, 21 L. R. A. 391, 11 Cyc. 1077, compare *Virginian Ry. Co.* v. *Avis,* 124 Va. 711, 718, 98 S. E. 638. The burden rests upon the person relying on such a covenant to bring

himself within its terms. These principles apply with espe-
cial force to persons who are not parties to the instrument
containing the restriction. 5 Am. & Eng. Ency. L. (2d Ed.),
p. 11; *Hemsley* v. *Marlborough House Co.,* 62 N. J. Eq. 164,
50 Atl. 14; *McNichol* v. *Townsend,* 73 N. J. Eq. 276, 67 Atl.
938; *Lowell Inst., etc.,* v. *Lowell,* 153 Mass. 530, 27 N. E.
518, and (by analogy) *People's Pleasure Park Co.* v. *Roh-
leder,* 109 Va. 439, 445, 61 S. E. 794, 63 S. E. 981.

[3] In order for the restriction to operate as between sub-
sequent grantees of different adjacent lots or parcels of the
same original tract, it must appear from the instrument ex-
pressly, or by a fair interpretation thereof, that it was in-
serted for that purpose; otherwise it will be assumed that
it was intended by the parties to the original deed to inure
only to the benefit of the grantor, or his heirs and assigns.
*Jewell* v. *Lee,* 14 Allen (Mass.) 145, 92 Am. Dec. 744.

[4] The natural method for a landowner to follow in
establishing and evidencing such a general building scheme
as is relied upon in this case is to make some clear and defi-
nite record thereof by indorsement on the plat, or by indi-
cating a building line thereon, or by express recognition and
provision in the several deeds to the purchasers. In the note,
*supra,* 37 L. R. A. (N. S.), at page 30, the author, in deal-
ing with the existence and effect of a general building plan
or scheme adopted by a landowner in subdividing and sell-
ing land, says:

"In considering the effect of the existence of a building
plan or general scheme of development upon the rights of
the parties, it must be borne in mind that the problem pre-
sented is: What was the intention of the parties? This is
ascertained by the evidence presented. The plan or scheme
furnishes evidence of this intention. As was said by Col-
lins, L. J., in an English case: 'Where a vendor sells land
and retains other land, and imposes on the purchaser a cov-
enant, it becomes a question of fact what the effect of that

covenant is. That being a question of fact, it must be decided in the light of the evidence, as are all other questions of fact. But if you find that a building scheme exists, proof of that building scheme may be given. It is only a matter of evidence, and it is perfectly competent to prove by other evidence, if you can find it, whether or not the building scheme applies. So, it has been held that it is not necessary that there should have been a general plan in order to make such agreements enforceable between subsequent grantees. The court said that it is not because a plan is deranged that the court interferes, but because rights are invaded, or about to be; and this fact may exist in the plan of two lots as well as in one of two hundred. The plan often furnishes the proof of the terms on which the sales were made; but the fact of the alleged terms is as effective when proved by a single deed as when proved by a plan.

"The plan furnishes a very strong inference that it was the intention to make the restrictions specified mutually binding on each purchaser of a lot in the plot included therein, but it is not necessarily conclusive. If, from all the evidence—the map, the advertisements, the covenants in the deeds themselves—the uniform scheme of development or improvement is proved to have been the intention of the parties, equity will carry it out at the suit of any of the lot holders; provided, of course, he has not by his own conduct shut the doors of the court."

[5] It is to be distinctly noted that the mere adoption and existence of a general practice or custom whereby the owner includes in each of his conveyances for lots a uniform building restriction, is not in itself and alone sufficient to give the various vendees the right to enforce the restrictive covenant *inter sese.* That will depend upon the intention of the grantor, and there must be affirmative and preponderating evidence, either by express provisions of the deeds, indorsement on the plat, or satisfactory proof, to show that

the purpose of the plan was to establish a mutuality of covenant based upon a contemplated mutual benefit, and not merely a personal covenant with the grantor to be enforced or waived by him according to his interest or pleasure.

[6] In the instant case it appears that the lots owned, respectively, by the appellant and appellee were parts of a large boundary of land formerly owned by the Port Norfolk Land Company, and subdivided and sold by that company to various purchasers in accordance with duly recorded plats. It does not appear that the land company by any corporate action ever fixed upon a definite and uniform building scheme, nor is anything of that sort indicated upon either of the two plats which it recorded, and there is nothing in any of the deeds to the separate lots to suggest that the building restriction was intended otherwise than for the benefit of the grantor. There is, to be sure, much respectable testimony, particularly that of an attorney for the company and that of one of the real estate agents who sold many of the lots, tending to show that the company's policy, especially with reference to lots in the part of the plat in which appellant's lots are situated, was to establish a twenty-five foot building line for the mutual benefit of the company and the purchasers. This testimony, however, as pointed out by the judge of the trial court, was largely based upon opinion and belief, and it is counterbalanced, if not outweighed, by the fact that the plat showed no plan or purpose to favor one section of the entire property over another, that the company has at all times and at will sold lots in either part of its plat without any restrictions, and that nothing in the deeds containing the restrictions indicates any purpose to make the covenant run with the land, or operate in favor of any person except the grantor. It is true that in the portion of the property in which the appellant's lots are situated, a very decided majority of deeds from the company contain the building restriction in ques-

tion, that this territory is largely devoted to residential purposes, and that the building line has generally been observed in the erection of residences. But it is equally true that in all parts of the plat, including that in the near vicinity of the appellant's property, some residences and other structures have been erected within a distance of less than twenty-five feet of the front line of the lots, and that the company has apparently at all times omitted the restriction in accordance with its own purposes and pleasure.

Miss Mildred Robinson, a deputy clerk in the office in which the plats and deeds covering this property are recorded, was introduced as a witness on behalf of the appellee and testified that she had made an examination of all the conveyances from the Port Norfolk Land Company from the time it was organized to the first of October, 1919, and that as a result of her examination she found that the company had conveyed 819 lots without building restriction, as against 802 conveyed with restriction. The judge of the corporation court made a careful analysis of her testimony in comparison with the plat, she not having paid any attention to the location of the lots but having based her report merely upon the conveyances, and while we recognize and agree to a certain extent with the contention made by counsel for appellee that some of the conveyances by the land company without restriction should not be regarded as in necessary conflict with the building scheme relied upon, we are entirely satisfied that in the result the trial court was right in holding that the company's dealing with its property has been inconsistent with and repels the claim that there was ever such a general scheme on the part of the company as would entitle the complainant to enforce the covenant or restriction in the Owens deed against the appellee.

Counsel for appellee point out that "all the lots in which the company failed to include the restriction which are

anywhere near the lots of the petitioner and defendant were conveyed by the company *after* the deed to your complainant, and were practically all conveyed in five deeds," and it is claimed that the trial court held that the land company by these subsequent conveyances could defeat rights previously acquired by the appellant. This was not the effect of the holding of the trial court. The five deeds referred to were made very shortly after the deed to the complainant, some of them not more than five days thereafter, and the effect of the holding of the court was, not that this subsequent act of the company defeated any previously acquired right of the appellant, but that it showed a course of conduct inconsistent with the existence of such a general scheme as is relied upon by the appellant. We may well conclude the discussion of this branch of the case by the following excerpt from the written opinion of the trial court, to-wit: "Speaking more particularly of the block on Maryland avenue which includes the lots of plaintiff and defendant, and having reference to the list and plat aforesaid, it may be said that of the fifteen lots in said block twelve were conveyed without the restriction and only three with it, viz: Lots 443 and 445 belonging to defendant and plaintiff, respectively, and 455 to some third party, and it is worthy of note that lot 444 lying between lots 443 and 445 is one of the lots conveyed without restriction."

The remaining contention of the appellant is that, even if the evidence fails to establish the general plan alleged, as he "was a subsequent purchaser from the land company of an adjacent lot, he was entitled to enforce the restriction as against a grantee from a prior purchaser whose recorded deed contained the same restriction."

This contention must be rejected for reasons already indicated. As previously stated, the appellant's lot does not adjoin the lot upon which the appellee proposes to extend

his building.   If, however, the lots were adjacent, the proof
of the general plan here relied on having failed, neither
of the grantees could enforce the restriction as against the
other.   *Jewell* v. *Lee, supra.*

For the reasons stated the decree complained of must
be affirmed.

*Affirmed.*