LINDER CORPORATION *v.* PYEATT.

5-261                                    264 S. W. 2d 619

Opinion delivered January 25, 1954.

Rehearing denied March 8, 1954.

*Frank J. Wills,* for appellant.

*Yingling & Yingling,* for appellee.

ED. F. McFADDIN, J.  The question posed is whether a certain restrictive covenant should be cancelled as a cloud on the title of the plaintiff property owners.  The

Chancery Court granted the prayed relief; and by this appeal the defendant challenges the correctness of the decree.

For several years prior to April, 1946, the Lakeside Lumber Company (a partnership composed of Paul Leird and others, and hereinafter called "Lakeside") owned a tract of approximately 115 acres situated East of the City of Searcy. Near the center of this 115-acre tract there was an artificial body of water covering several acres and called "Lake Doniphan." The mill and houses of Lakeside were on the East side of Lake Doniphan; and the lands on the West side of Lake Doniphan were wooded and used for pasture purposes. The lake served as a source of water for the mill and also as a swimming pool for the mill's employees.

On April 15, 1946, (after it was already known that U. S. Highway No. 67 would be re-routed so as to pass through this 115-acre tract) Lakeside conveyed to the appellant, Linder Corp. (hereinafter called "Linder"), the Lakeside mill and equipment and all of the 115-acre tract lying East of the center line of Lake Doniphan; and the deed from Lakeside to Linder contained this restrictive covenant as regards the lands lying West of the center line of Lake Doniphan:

"We the undersigned further covenant with the said Linder Corporation that we will file a plat and bill of assurance subdividing the property which we now own on the West side of Lake Doniphan into six (6) building lots and that we will restrict the use of said lots to residential purposes requiring that no residence be built thereon to cost less than Seven Thousand, Five Hundred Dollars ($7,500.00)."

The foregoing quoted language will be hereinafter referred to as "the restrictive covenant." Lakeside did not file the plat or bill of assurance, but in July, 1947, conveyed all of its lands lying West of the center line of Lake Doniphan to appellees, Pyeatt and Vaughan by a Deed which stated that the conveyed lands were subject

to "the following encumbrances, to which this conveyance is made subject, to-wit:

"(1) A right-of-way for U. S. Highway No. 67 as now surveyed and under construction across portions of the above described lands.

"(2) The following covenant contained in the deed from Lakeside Lumber Company, the partnership aforesaid, to Linder Corporation, which is of record in the office of the Circuit Clerk and Ex-Officio Recorder of White County, Arkansas, which reads as follows:

" 'We the undersigned further covenant with the said Linder Corporation that we will file a plat and bill of assurance subdividing the property which we now own on the West side of Lake Doniphan into six (6) building lots and that we will restrict the use of said lots to residential purposes requiring that no residence be built thereon to cost less than seven thousand five hundred dollars ($7,500.00).'

"The grantees herein assume the aforesaid undertaking and covenant in the aforesaid deed to the Linder Corporation, and do hereby agree to save the grantors harmless from any loss, damage or expense hereafter incurred by the grantors by reason of any failure, if any, of the grantees to fulfill said covenant."

It will be observed that the restrictive covenant contained in the deed from Lakeside to Linder was carried verbatim in the deed from Lakeside to Pyeatt and Vaughan.

Instead of dividing the lands lying West of the center line of Lake Doniphan into six lots and restricting all of the said lots as to cost of residential buildings, as stated in the foregoing restrictive covenant, the said Pyeatt and Vaughan in 1950 subdivided the said lands into *23 lots* known as "Lakewood Addition", and omitted all restrictions on two of the lots. Pyeatt and Vaughan then sold some of the 23 lots to other parties, who are co-plaintiffs with Pyeatt and Vaughan in this suit.

On October 13, 1952, Pyeatt and Vaughan and the other owners of lots in Lakewood Addition filed this present suit against Linder claiming: (a) that the restrictive covenant contained in the deed from Lakeside to Linder, and also in the deed from Lakeside to Pyeatt and Vaughan, was ambiguous and void; (b) that the said restrictive covenant was arbitrary, unreasonable and void; and (c) that the said restrictive covenant worked an undue hardship and should be declared void due to changed conditions. Linder resisted the complaint on all points, but the Chancery Court granted the prayed relief; and Linder has appealed.

I. *Parol Testimony To Explain The Restrictive Covenant.* The cases uniformly hold (a) that when the language of the restrictive covenant is clear and unambiguous, the parties will be confined to the meaning of the language employed; and (b) that if the language is plain and unambiguous, it is unnecessary and improper to inquire into the surrounding circumstances or the objects and purposes of the restriction for aid in its construction, because when the language is clear and unambiguous it needs no evidence to explain it. Some of the cases so holding are *Highland Realty Co.* v. *Groves,* 130 Ky. 374, 113 S. W. 420; *Porter* v. *Johnson,* 232 Mo. App. 1150, 115 S. W. 2d 529; *Hilsinger* v. *Schwartz,* 99 N. J. Eq. 288, 133 Atl. 184; *Moore* v. *Kimball,* 291 Mich. 455, 289 N. W. 213; and *Woodward* v. *Carey,* 321 Mich. 163, 32 N. W. 2d 428. Other cases sustaining the rule may be found in 26 C. J. S. 518.

On the theory that the language used in the restrictive covenant here involved was ambiguous, the Chancery Court allowed the plaintiffs to introduce oral evidence relating to the circumstances existing and conversations between the parties at the time when Lakeside conveyed to Linder the land East of the center line of the Lake, and also when Lakeside conveyed to Pyeatt and Vaughan the land West of the center line of the Lake. We hold that the language in the restrictive covenant was plain and unambiguous and that the said testimony, as to the circumstances and conversations,

should not have been received. Lakeside agreed with Linder that Lakeside would subdivide "the property we now own on the West side of Lake Doniphan into six building lots . . ." That language is about as clear as the English language can be made. It referred to the entire tract and not merely the part fronting on the Lake. When the restrictive covenant said "into six building lots" it meant six, and could not be understood to mean *not less than six building lots*. When Pyeatt and Vaughan received their deed from Lakeside it contained the same clear, unambiguous language in the restrictive covenant. Thus there was no ambiguity to be explained; and the Chancery Court was in error in allowing oral evidence to be introduced which in effect sought to vary or contradict the clear and unambiguous language.

II. *The Restriction As Arbitrary.* The plaintiffs argue that the restrictive covenant was arbitrary and void; and they cite our case of *City of Little Rock* v. *Joyner,* 212 Ark. 508, 206 S. W. 2d 446, in which we quoted the rule as follows:

" 'Stated another way, equity should entertain jurisdiction to cancel a restrictive covenant in a deed where it would be oppressive and inequitable to give the restriction effect as where the enforcement would have no other result than to harass or injure the one without accomplishing the purposes for which originally made.' "

Oral testimony was properly admissible on this question, but such oral testimony established that there was a real reason why Linder wanted to limit the number of lots into which the West side property could be subdivided: on the East side of the Lake, Linder had more than 50 houses for its employees, and these employees used the Lake for swimming; also Linder used water from the Lake to operate its wood mill. An excessive number of people, living in the property West of the Lake and using the Lake, would materially interfere with Linder's use. Thus the restriction imposed by Linder was not designed to merely harass and injure the persons owning the property West of the Lake but was

to accomplish a real benefit for the property East of the Lake.

III. *Change In Character Of The Neighborhood.* The plaintiffs urged in the Trial Court that there had been such a change in the character of the neighborhood of the property West of the Lake—between the date of the restriction in 1946 and the filing of this suit in 1952 —that the restrictive covenant had become obsolete. A discussion of this matter of ''Change in Character of the Neighborhood'' may be found in 14 Am. Jur. 646 et seq.; and Annotations may be found in 54 A. L. R. 812 and 4 A. L. R. 2d 1111. In *City of Little Rock* v. *Joyner* we recognized that a change in the nature of the neighborhood might make the enforcement of the restrictive covenant to be oppressive and inequitable.

But the facts shown in this case present no such situation as to render the restrictive covenant void on this basis. When Lakeside conveyed the property to Linder in 1946 it was well known that the highway was to be re-routed so as to pass through the Lakeside property West of Lake Doniphan. Vaughan introduced a sketch that he made before Pyeatt and Vaughan purchased the property from Lakeside, and in that sketch (which is Exhibit 5 in the record) Vaughan showed the location of the new highway with its various intersecting roads and showed the proposed subdividing of the property. It was intended at that time that residences would be built on the property West of the Lake, and that is exactly what has happened. There has been no change of neighborhood within the purview of the cases. This is a case in which real estate developers want to make 23 lots out of an addition instead of merely 6 lots, as provided by the restrictive covenant.

It follows that the decree of the Chancery Court is reversed and the cause is remanded with directions that the complaint be dismissed for want of equity, and for further proceedings not inconsistent with this opinion.

MR. JUSTICE WARD dissents.