### B. G. WEST and Betty WEST *v.*
### Beryl F. ANTHONY Sr. and Oma Lee ANTHONY

75-220                                        533 S.W. 2d 518

### Opinion delivered March 8, 1976

*Brown, Compton & Prewett,* for appellants.

*Spencer & Spencer,* for appellees.

CONLEY BYRD, Justice. The principal issue on this appeal is whether appellees, Beryl F. Anthony Sr. and Oma Lee Anthony, his wife, have a right to enforce a restrictive covenant in the title of appellants, B.G. West and Betty West, his wife. The record shows that one Mellor was a common owner and that in 1925 he created Mellor's Third Subdivision to the City of El Dorado consisting of Blocks 9, 10, 11 and 12. Blocks 9, 10 and 12 were each divided into eight lots. Block 11 was not subdivided into lots but has been sold by Mellor or his heirs in parcels. The common grantor has con-

veyed all of the property in Mellor's Third Subdivision, and except for one or two conveyances, all of the conveyances contain restrictive covenants similar to those set out in the conveyances to the parcels now owned by appellants and appellees. The restriction set forth in the titles of the parties hereto reads:

"This conveyance is made subject to the following conditions:

The first improvements placed on said property shall be a residence or dwelling house, together with such customary outhouses as the owner may elect to erect on said lot, and said building shall not cost less than Five Thousand Dollars, and no building or structures except the steps to any house to be erected shall be located less than thirty (30) feet from the front or street line. Said property shall be used as residence property."

The properties of both parties hereto front on North Madison Street. This litigation was commenced after appellees objected to the construction of a carport by appellants within the 30 ft. restriction. The trial court found the issues in favor of appellees and enjoined the construction of the carport. For reversal, appellants rely upon the points hereinafter discussed.

1. We find four ALR annotations on "Restrictive Covenant — Who May Enforce," see Annot., 21 ALR 1281 (1922), Annot., 33 ALR 676 (1924), Annot., 89 ALR 812 (1933), and Annot., 51 ALR3d 556 (1971). The rule with respect to who may enforce such covenants when there is a general scheme of development is set forth in Annot., 21 ALR 1281, 1288 (1922), which quotes from *Nottingham Patent Brick & Tile Co.* v. *Butler*, 16 Q.B.D. 788 (1886), as follows:

"... There are two lines of cases to be found in the books. The first is where there has been a sale of part of a property with no then-existing intention of selling the rest, and subsequently there is a sale of another part; then, as regards the later sale, you cannot look at the conditions of the former sale; you must look only at the

conditions relating to the later sale. The other line of cases is where the whole of a property is put up for sale (not necessarily under a building scheme), but is put up for sale in lots subject to certain restrictive covenants; then it is a question of fact whether it was or was not the intention that the restrictive covenants should be entered into for the benefit of each of the purchasers as against all the others, and it is a most material circumstance whether the vendor reserves any part of the property for himself. If he does not reserve any part, that is almost, if not quite, conclusive (unless there is something contradictory) that the covenants which he takes from the purchasers are intended for the benefit of each purchaser as against the others."

To counteract the general scheme rule, appellants make two contentions: (1) That the restrictive covenant was not placed in all of the deeds — citing *Stevenson* v. *Spivey*, 132 Va. 115, 110 S.E. 367, 21 ALR 1276 (1922) and (2) That the common grantor waived the restrictions as to appellees or their predecessors in title.

We can find no support for appellants in *Stevenson* v. *Spivey, supra,* for it was there pointed out that the common grantor sold lots in either part of its plats at will and without regard to restrictions. In so holding, the court there stated:

"... It is true that in the portion of the property in which the appellant's lots are situated a very decided majority of deeds from the company contain the building restriction in question, that this territory is largely devoted to residential purposes, and that the building line has generally been observed in the erection of residences. But it is equally true that in all parts of the plat, including that in the near vicinity of the appellant's property, some residences and other structures have been erected within a distance of less than 25 feet of the front line of the lots, and that the company has apparently at all times omitted the restriction in accordance with its own purposes and pleasure."

Neither do we find any relief for appellants in the alleged

waiver from the common grantor which provides:

> ". . . do hereby waive and set aside for the use and benefit of MRS. HILDA ZAVELO all restrictions set out in that certain warranty deed made by ourselves . . . under date of November 26, 1937. . . .
>
> The restrictions in said deed are being waived because the grantee has complied with the restrictions in full."

First, the restriction apparently applies only to the first improvements placed on the property, and the alleged waiver is nothing more than an acknowledgment that the improvements complied with the restrictions. Second, the authorities hold that a release by the common grantor is subject to the rights of other parties, *Allen* v. *Massachusetts Bonding & Ins. Co.*, 248 Mass. 378, 143 N.E. 499, 33 ALR 669 (1924).

2. Appellants, relying upon *Linder Corp.* v. *Pyeatt*, 222 Ark. 949, 264 S.W. 2d 619 (1954), contend that deeds as to properties in other Mellor subdivisions and testimony as to construction upon other properties were inadmissible to show the grantor's intent. The case of *Linder Corp.* v. *Pyeatt, supra*, goes no further than to hold that, if the language of a restrictive covenant is plain and unambiguous, it is unnecessary and improper to inquire into the surrounding circumstances and purposes of the restriction for aid in its construction. The restrictive covenant here involved is not so plain and unambiguous as to who may enforce the provisions thereof to prevent the proof offered by appellees.

3. Another contention by appellants is that the language "front or street line" means the actual curb line rather than the platted line of the particular street. We find no merit to this contention. Street line when used in connection with platted lots and blocks ordinarily means the platted street line. See *Yoemans* v. *Herrick*, 178 Mo. App. 274, 165 S.W. 1112 (1914).

4. Finally, appellants suggest that we should remand this case to permit them to furnish proof that the general

building scheme established by the common grantor has been abandoned. We find no merit to this contention. On rare occasions we have remanded a case in chancery for further development, but in all such cases it has occurred because of some conduct or ruling of the trial court on a theory that made it unnecessary or impractical for a party to put on his proof upon a particular issue. However, here there was nothing to prevent appellants from making whatever showing of abandonment the proof would support, and consequently, we must apply the usual rule that an appeal in chancery will be decided upon the record made in the trial court.

Affirmed.