Inell JONES et ux *v.* Lester COOK et ux

80-257                                           611 S.W. 2d 506

Supreme Court of Arkansas
Opinion delivered February 9, 1981

*William G. Wright* and *Donald P. Chaney, Jr.,* for appellants.

*Shaw, Shaw & Tucker,* for appellees.

DARRELL HICKMAN, Justice. The question to us is the enforceability of a restrictive covenant in a deed which provides that no mobile homes may be placed on the property. Lester

Cook, the appellee, placed a mobile home on his tract of land knowing that his deed contained a restriction against mobile homes. The developer who sold the tract to Cook sued to have the mobile home removed. The chancellor held that because the developer had in one instance granted a tract owner an exception to another covenant, the restriction against mobile homes could not be enforced against Cook. We find the chancellor wrong and reverse the decree.

The appellants, Inell Jones and his wife, bought a six hundred acre tract of land in Polk County to develop into residential sites. The tract was divided by a county road. The land south of the road was to be used strictly for residences; the area north of the road was to be unrestricted. Before this case came to trial fourteen tracts had been sold. The development scheme, according to the evidence, was being carried out by restrictions in each deed. The Joneses had filed no plat with the county recorder as provided for in Ark. Stat. Ann. § 50-427. The test for a general plan was stated in *Sedberry* v. *Parsons*, 232 N.C. 707, 62 S.E. 2d 88 (1950). There the court said:

> The primary test of the existence of a general plan for the development or improvement of a tract of land divided into a number of lots is whether substantially common restrictions apply to all lots of like character or similarly situated.

It is one of two methods approved in Arkansas. *Moore* v. *Adams*, 200 Ark. 810, 141 S.W. 2d 46 (1940).

With one exception all of the deeds in the development contained this restriction: No mobile homes and/or commercial buildings shall be placed on the property. A deed to Agnes Lott varied the restrictive clause by reading: "That no mobile homes or commercial buildings are to be on said land except for a tomato house." This exception related to the restriction on commercial buildings, but not to mobile homes.

At trial, Cook did not defend on the basis of the exception granted to Agnes Lott, but simply stated that he had no

notice of the restrictions in his own deed and had expended over $2,000 on the lot before he learned of the restrictions. In addition he contended that his was not a true mobile home and that the developer had not filed a plat as required by Ark. Stat. Ann. § 50-427.

The chancellor found that the developer did have a general plan for development but held that because the general plan was violated by the deed to Lott the restriction could not be enforced against Cook, citing *Moore* v. *Adams, supra*, as authority. That case is easily distinguished. The subdivision in *Moore* was found to have "an entire absence of any general plan in the restrictions . . ." of the subdivision. The court noted that some deeds in *Moore* had no restrictions, others had restrictions allowing only "residences," and still others had limitations on cost of "dwellings." *Moore* v. *Adams, supra*, actually supports the appellants' position. It points out that the breach of the convenant by the developer not only must be substantial but also must be a breach of the same restriction. In *West* v. *Anthony*, 259 Ark. 474, 533 S.W. 2d 518 (1976), we upheld the enforcement of a restrictive covenant where an unplatted subdivision was involved even though some of the deeds contained no restrictions at all. In *Leffingwell* v. *Glendenning*, 218 Ark. 767, 238 S.W. 2d 942 (1951), we upheld a restriction that forced a buyer to move a wall.

Our reasons for finding no substantial breach are supported by the testimony. Jones testified that Agnes Lott bought two tracts, one south of the road in the restricted area and one north of the road in an unrestricted area. Testimony indicated that it was never intended that the exception be granted for a "tomato house" south of the road. While Agnes Lott did not testify, it was conceded that her lots were at the "end of the road" about a fourth of a mile from Cook's tract. In *Brigham* v. *Mulock Co.*, 74 N.J. Eq. 287, 70 Atl. 185 (1908), the court noted that: "[T]he owner of a single lot may have no concern whatever in a violation of the covenants on a part of the tract distant from his lot."

The fact that other violations have occurred does not always constitute acquiescence or waiver of the restrictions. This was shown in *Titus* v. *Kopacz*, 359 Mich. 671, 103 N.W.

2d 344 (1960), where the court found that:

> In respect to violations in the subdivision, the plaintiffs showed by convincing testimony that there are 14 violations of building restrictions on the 163 one-hundred foot lots in the subdivision with but one of the violations on Beverly boulevard where the individual plaintiffs reside. This the court finds to be a fact. The court further finds that such a proportionately small number of violations is not subversive of the original plan of development in relation to the set back area and does not constitute a waiver of the restrictions which would prevent other property owners from enforcing them. *Corey [Carey]* v. *Lauhoff*, 301 Mich. 168 [3 N.W. 2d 67]. Furthermore, the fact that other provisions of the original restrictive covenants may have been violated does not vitiate those covenants that have been maintained under a general plan of development. *Wilcox* v. *Mueller*, 250 Mich. 167 [229 N.W. 600].

The "tomato house" that was authorized in Agnes Lott's deed had not been built at the time of this suit. Cook did not even know that the exception had been granted and it was not the basis of his defense. Cook's defense was that he did not know about the restriction in his own deed when he purchased the property. The chancellor found that Cook knew of the restriction when he purchased the mobile home and placed the home on his property; Cook did not deny that fact. Cook said he was not told of the restriction before he got his deed in January, 1978, but first learned of the restriction in May, 1978. He admitted that he did not intend to put a mobile home on the lot when he bought the land but intended to put a commercial log house on it. However, Cook stated that he was "burned up" when he saw the restriction and he did not think the restriction would stand up. He said he felt "a man owns his land outright and ought to be able to do whatever he sees fit . . . "

The chancellor's misgivings, expressed in oral remarks at the conclusion of the case, were directed at this type of development where there was no platted subdivision and where there were no restrictions in a Bill of Assurance filed

pursuant to Ark. Stat. Ann. § 50-427. Also, this development was not complete and would not be complete until all the deeds were delivered.

We have the same misgivings about such a development and the manner in which the restrictions are imposed in each deed. But such restrictions have been found legal where a general plan exists. *Moore* v. *Adams, supra.* We must deal with the case before us, not speculating on the future of the development. There are remedies available to enforce such a plan.

The evidence in the present case was decidedly against Cook since it indicated that Cook simply did not want to abide by the restrictions. He knowingly violated the contract without any legal or equitable excuse. Consequently, he must suffer the consequences.

The decree is reversed and the cause remanded for proceedings consistent with this opinion.

Reversed and remanded.