Cite as 2026 Ark. App. 213

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-24-699

FIRST SERVICE BANK

APPELLANT

V.

MARSHA AND GERALD SNOWDEN

APPELLEES

Opinion Delivered April 1, 2026

APPEAL FROM THE FAULKNER
COUNTY CIRCUIT COURT
[NO. 23CV-23-687]

HONORABLE CHARLES E.
CLAWSON III, JUDGE

AFFIRMED

## MIKE MURPHY, Judge

Appellant First Service Bank (First Service) appeals the final order of the Faulkner County Circuit Court permanently enjoining it from using certain land it owns in a manner inconsistent with a subdivision's bills of assurance. We affirm.

In 1969, a plat was recorded in the Faulkner County land records creating the Goodhaven Subdivision. The subdivision planned for twenty-five lots, twelve of which front Highway 65 in Greenbrier, Arkansas. The original developers of the subdivision recorded a bill of assurance for the subdivision that provided, among other things, that none of the lots may be used for purposes other than residential, none of the lots may be subdivided, the bills of assurance may be amended with approval of at least 75 percent of the subdivision landowners, and any property owner may initiate a cause of action to enforce or prevent violation of any of the restrictions.

Over the years, eight lots were released from the bills of assurance by approval of over 75 percent of the subdivision landowners. One of those lots is Lot 12, which is owned by appellant First Service Bank. First Service has operated a bank on Lot 12 for over twenty-five years. Over time, seven more lots were rezoned by the city for commercial use and, despite not being formally released from the bills of assurance, are being used for commercial purposes. First Service also owns Lot 23, a long rectangular lot immediately adjacent to Lot 12. Lot 23 runs behind Lots 9, 10, 11, and 12, which all front Highway 65.

At First Service's request, in May 2023, the Greenbrier City Council rezoned Lot 23 from residential to quiet office or commercial. Then, on May 10, 2023, appellees Marsha and Gerald Snowden (owners of Lot 18) and the Barbara Johnson Revocable Trust (owner of Lots 24 and 25), along with other plaintiffs now dismissed, filed a complaint against First Service alleging that its proposed use of Lot 23 would violate the bills of assurance. The appellees sought an injunction to limit the bank's use of Lot 23 to a manner consistent with the bills of assurance.

Before trial, First Service moved for summary judgment, arguing that the bills of assurance were no longer enforceable because the common plan of development of Goodhaven Subdivision had been destroyed. The bank further argued that even if it had not been destroyed, the other property owners had waived their right to challenge the bank's proposed commercial use when seven other lots were being used for commercial use without contest, and the complainants' own properties were likewise in violation of certain provisions of the bills of assurance. As exhibits, the bank included stipulated photos of homes in the

2

subdivision that were not brick or not all brick. The bank argued, alternatively, that even if the restrictive covenants are enforceable, it should still be allowed to use Lot 23 as a driveway to serve as a back entrance to Lot 12. That motion was denied.

At trial, Gerald Snowden testified that he was concerned about how commercial property would bring bright lights, additional traffic, and safety concerns to his residential neighborhood. He had attended the city council meeting to oppose the rezoning of Lot 23. Robin Hackett, the bank's chief operating officer, testified that the plan was to expand the bank's corporate office; and while it had obtained the signatures required by the bills of assurance to release Lot 12, they did not get the required signatures for Lot 23 because "we did not feel that we were able or had to follow them because no one else had been following them for over 20 years." Snowden agreed that his own home in the subdivision is about 75 percent siding and 15 percent brick.

Aaron Johnson testified that he lived in a home on Lot 24, and his mother lived in a home on Lot 25. He said that both homes have brick walls with some siding at the gables and soffit. ("That was the style back then."). He did not want commercial development and accompanying noise so close to his home.

After taking the case under advisement, the circuit court issued an order on July 30, 2024. In that order, the court found that the bills of assurance comply with Arkansas Code Annotated section 18-12-103 (Repl. 2015) and that the bank had notice of the bills of assurance before it bought Lot 23 and therefore had to comply with the residential-use

3

restriction. The court also found that the bank had not proved its defenses of waiver, laches, and estoppel.

First Service appeals, arguing that the circuit court erred in issuing injunctive relief because (1) the bills of assurance for the subdivision are no longer enforceable, and (2) the owners have failed to enforce the restrictions against noncompliant properties and are themselves in violation of other restrictions in the bills of assurance. First Service alternatively argues that even if we affirm the circuit court's residential-use finding, that it should, at a minimum, still be allowed to use Lot 23 as a driveway to provide additional access to Lot 12.

Cases traditionally sounding in equity are reviewed de novo on the record. *Perkins v. Henry*, 2010 Ark. App. 126, at 1. Findings of fact are reviewed for clear error; a finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been made. *Cochran v. Bentley*, 369 Ark. 159, 165, 251 S.W.3d 253, 259 (2007).

Arkansas Code Annotated section 18-12-103 provides that the use or development of real property may be restricted if the instrument creating it is executed by the owners of the real property and recorded in the county where the property is located. Restrictions on the use of land are not favored, and all doubts are resolved in favor of the unfettered use of land. *Forrest Constr., Inc. v. Milam*, 345 Ark. 1, 9, 43 S.W.3d 140, 145 (2001).

The ordinary method of establishing restricted districts when new subdivisions are surveyed and platted is to file with the dedicatory plat of the survey a bill of assurance

4

whereby the owner of the land platted obligates himself not to convey except in conformity with the restrictions imposed in the bill of assurance. *Moore v. Adams*, 200 Ark. 810, 816, 141 S.W.2d 46, 49 (1940). For restrictions to be enforceable, there must be a "general plan of development." *Forrest Constr.*, 345 Ark. at 8, 43 S.W.3d at 145. The test for a general plan of development is whether substantially common restrictions apply to lots that are of "like character" or are "similarly situated." *Perkins v. Henry*, 2010 Ark. App. 126, at 3.

That said, even though building restrictions may be imposed and enforced, their enforcement may be so relaxed that they will be said to have been abandoned. *Moore*, 200 Ark. at 817, 141 S.W.2d at 49. In the absence of a provision to the contrary, the right to enforce a restrictive agreement may be lost by laches or acquiescence. *Id.* Citing *Moore*, First Service explains on appeal that this is the case here: the general plan of development has been abandoned and, as a matter of law, is therefore no longer enforceable. Of the original twenty-five lots in the subdivision, only ten (counting the lot subject to this litigation) remain "noncommercial."

In *Moore*, the developer filed a dedicatory plat but without bills of assurance. The restrictive covenants were instead imposed through a patchwork of deeds. As a result, some deeds contained some restrictions while others did not. The supreme court held that there was never a general plan to begin with, much less a plan that was pursued, and it was therefore erroneous to enforce such a plan against the appellants.

That is not the case here. First, a plat was filed with bills of assurance. Second, all the lots were subject to the same common restrictions. Third, the plan was, in fact, pursued:

5

several lots have homes on them, and lots that were released were done so pursuant to the plan itself. First Service explains that by virtue of releasing lots and not enforcing the residential-use restriction on the others, the owners of the subdivision have created a de facto mixed-use subdivision. We disagree. Formally releasing the eight lots demonstrates that the owners were, in fact, following the general plan. And, concerning the noncompliant lots, the existence of some violations does not establish abandonment of the general plan. *Jones v. Cook*, 271 Ark. 870, 873, 611 S.W.2d 506, 507 (1981) ("[T]he fact that other provisions of the original restrictive covenants may have been violated does not vitiate those covenants that have been maintained under a general plan of development."). Moreover, "[t]he owner of a single lot may have no concern whatever in a violation of the covenants on a part of the tract distant from his lot." *Id.* (quoting *Brigham v. Mulock Co.*, 70 A. 185, 186 (N.J. Sup. Ct. App. Div. 1908)). That is also the case here—the appellees' concerns are directed less toward lots fronting the highway and more toward the encroachment of commercial use into the interior of the subdivision.

This flows into First Service's related argument, which is that by virtue of not enforcing the restrictions against owners with noncompliant lots for almost twenty years, the owners have waived their right to do so now. But the fact that earlier violations went unchallenged does not mean that a court sitting in equity must permit additional violations. *See id.* Simply because the appellees have chosen not to pursue enforcement concerning the other noncompliant lots does not mean that they may not seek to enforce the restrictive covenants now against First Service. Acquiescence to longstanding nonconforming use might

arguably bar enforcement to that particular use, but it does not automatically permit *new* nonconforming use. *See Ingram v. Wirt*, 314 Ark. 553, 565-B, 869 S.W.2d 685, 686 (1993) (supplemental opinion on denial of rehearing) (holding that tolerating one violation does not waive the right to enforce against a subsequent, different violation on the same property).

Similarly, laches might be a defense for the longstanding nonconforming landowners, *but see Goforth v. Smith*, 338 Ark. 65, 78, 991 S.W.2d 579, 587 (1999), but it does not apply to First Service's new nonconforming use. Even if it did, however, laches requires a demonstration of prejudice to the party alleging it as a defense resulting from a plaintiff's delay in pursuing a claim, *id.*, and First Service has not alleged any prejudice or detrimental reliance based on the inaction of the subdivision owners.

First Service also argues that the owners bringing this suit were not in compliance with the bills of assurance, and the doctrine of unclean hands applies. Again citing *Moore*, it explains that one cannot obtain relief in equity against the violation of a restrictive agreement entered into in pursuance of a general plan if he, himself, is guilty of a substantial breach of the same restriction. 200 Ark. 810, 141 S.W.2d 46. Here, however, the appellees have not breached the "same restriction." First Service points to the use of siding instead of brick and to the trust's ownership of two houses on contiguous lots, but those alleged violations concern residential structures, whereas the restriction at issue here is the proposed commercial use of Lot 23.

Turning to First Service's alternative argument, it argues that if we affirm the circuit court's order, we should hold that the bank is allowed to use Lot 23 as a driveway because

7

doing so would not violate the residential-purposes-only restriction as a matter of law. This was an argument the bank made in its motion for summary judgment, which was denied. The final order is silent on the driveway issue, and it is therefore not preserved for our review. We will not review a matter on which the circuit court has not ruled. *TEMCO Constr., LLC v. Gann*, 2013 Ark. 202, at 7, 427 S.W.3d 651, 656. Nor does the court's denial of First Service's motion for summary judgment save it here. The denial of summary judgment is not reviewable on appeal; this is true even after a trial on the merits. *City of Little Rock v. Nelson ex rel. Nelson*, 2020 Ark. 34, at 5, 592 S.W.3d 633, 638.

The theory on which restrictions are imposed is that one taking title to land with notice that it is subject to an agreement restricting its use will not, in equity and good conscience, be permitted to violate its terms. *Moore*, 200 Ark. at 816, 141 S.W.2d at 49. First Service was aware of the restrictive covenants. We are not left with a definite and firm conviction that a mistake was made.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*The Jiles Firm, LLP*, by: *Gary D. Jiles* and *Matthew K. Brown*, for appellant.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellees.