449 So.2d 201 (1984)
PMZ OIL COMPANY, Appellant,
v.
ROBERT LUCROY and Patricia Lucroy, Appellees.
No. 54751.
Supreme Court of Mississippi.
March 21, 1984.
*202 C.E. Sorey, II, Ward, Martin, Terry, King & Sorey, Vicksburg, for appellant.
Robert G. Ellis, Ellis, Braddock & Bost, Vicksburg, for appellees.
Before WALKER, P.J., and HAWKINS and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal raises the question whether the developer of a real estate subdivision, the plat and covenants of which have not been recorded, should be equitably estopped from violating those covenants communicated to and relied upon by homeowners.
Here the developer told all lot purchasers, including Robert and Patricia Lucroy, the complainants below and appellees here, that its sixteen lot subdivision would be restricted to one quality single-family dwelling per lot. The Lucroys relied on these representations and purchased their lot and built their home. Thereafter, on one of the lots it retained, the developer sought to build six townhouse condominiums, a clear violation of the covenants communicated to the Lucroys.
After plenary hearing on the merits, the Chancellor held the developer estopped from violating the one-single-family-dwelling-per-lot-covenant. We affirm.

II.

A.
PMZ Oil Co., Defendant below and Appellant here, is a Mississippi corporation having its principal place of business in Warren County, Mississippi. J. Murray Pinkston, Jr., has at all times been the dominant individual within and actor on behalf of the corporation.
*203 At some time in 1976 PMZ acquired two adjoining tracts of land in Section 33, Township 16 North, Range 4 East, Warren County, Mississippi. The property adjoins Porters Chapel Road near Vicksburg.
In the following year PMZ engaged the services of professional surveyors who inspected the land and prepared a subdivision plat, dividing the land into 16 lots of various sizes and configurations. Each lot is in excess of one acre in size and several approach two acres. The plat was never presented to the Warren County Board of Supervisors for approval nor has it ever been recorded in the office of the Chancery Clerk of Warren County. See Miss. Code Ann. §§ 17-1-23, 19-27-21, et seq. (1972).
PMZ originally planned to develop an exclusive residential subdivision to be known as Raintree Subdivision. Acting through another corporation, Pinkston built a quality home on Lot 10. This home was designed to set the tone for the whole subdivision. On November 7, 1977, the Lot 10 dwelling was conveyed by Pinkston's other corporation to John C. Stepan and Rebecca E. Stepan. The deed reflecting the conveyance contained 13 protective covenants, the critical one of which provided that "no more than one (1) residence shall be built on a lot."
On June 28, 1978, Pinkston, again acting through another of his corporations, caused Lot 12 to be sold to Dan J. Cizek and Beverly J. Cizek. The deed to the Cizeks contained the same protective covenants found in the deed to the Stepans.
In the spring of 1978 Robert Lucroy learned of the proposed Raintree Subdivision. He engaged the services of Ernest Thomas, a real estate broker in Vicksburg. Acting on behalf of the Lucroys, Thomas approached Pinkston and inquired regarding the purchase of one of the lots in the Raintree Subdivision. Pinkston displayed to Thomas the subdivision plat and explained the gist of the protective covenants PMZ intended to impose within the subdivision. Pinkston made it clear to the Lucroys' agent that he contemplated a very exclusive subdivision, that each home would have to be at least 2,000 square feet and of quality build, and that only single-family dwellings would be allowed.
On January 25, 1979, PMZ Oil Co. executed and delivered unto Robert H. Lucroy and Patricia A. Lucroy its warranty deed conveying to the Lucroys Lot 11 of the Raintree Subdivision. This deed contained the same protective covenants as had been presented to realtor Thomas, and as had been included in the deeds to the Stepans and the Cizeks.
The deed had been preceded by sales contracts between PMZ and the Lucroys dated April 6, 1978, and May 16, 1978. The evidence reflects that some time after the execution of the April 6, 1978, contract but prior to the May 16, 1978, contract, Pinkston talked directly to Mr. Lucroy and explained the 13 protective covenants that were to apply to the Raintree Subdivision.
At some time in 1979 (the precise date is not clear from the record), the Lucroys constructed on their Lot 11 the home in which they presently reside.
On August 21, 1979, PMZ conveyed to the Cizeks Lot 13, the lot adjoining the lot the Cizeks had previously purchased. This deed contained the protective covenants in issue. On February 13, 1980, PMZ conveyed to Ferguson Builders of Vicksburg, Inc. three lots  Lots 14, 15 and 16, again with the protective covenants contained in the deed the same as in the deed to the Lucroys.
At the time the Lucroys began the construction of their home, they were aware of the protective covenants by virtue of Mr. Lucroy's discussions with Mr. Pinkston, by virtue of information conveyed by Mr. Pinkston through Mr. Thomas as the Lucroys' agent, and from the terms of the warranty deed of January 25, 1979. At that time there were at least two other deeds on file in the Office of the Chancery Clerk of Warren County, Mississippi containing the same protective covenants. These deeds affected Lots 10 and 12, the lots on either side of Lot 11 which was acquired by the Lucroys. One of those *204 deeds, that to the Stepans, dated November 7, 1977, had been of record for a year and 72 days prior to the consummation of the sale to the Lucroys, and, of course, prior to the Lucroys commencing construction on their lot.
The problems began in 1980 when Pinkston advised each of the then residents of the subdivision of his intention to build six townhouse condominiums on Lot 3. He presented to each a proposed plat which considerably reduced the number of lots that would be considered a part of Raintree Subdivision. The Lucroys and others made it clear, first that they considered the covenants as limiting the use of all 16 lots in Raintree Subdivision and second, that they considered these covenants as binding upon Pinkston and his corporation, PMZ Oil Co., as well as all subsequent purchasers of lots. They refused to consent to the construction of the townhouses. Pinkston's retort was that, if the homeowners prevented him from building the townhouses, he would not pave Raintree Drive as he had previously promised.
Late in 1980 Pinkston began to lay the foundation for the townhouses on Lot 3.

B.
On September 11, 1980, Robert Lucroy and Patricia Lucroy commenced this civil action by filing their bill of complaint against PMZ Oil Co. in the Chancery Court of Warren County, Mississippi. The Lucroys asked, inter alia, that PMZ be enjoined from construction of the townhouses, as they were not single-family dwellings.
On May 20, 1981, the case was called for trial on its merits in the Chancery Court of Warren County, Mississippi, Hon. Nat W. Bullard, Chancellor, presiding. After receipt of considerable testimony and exhibits on behalf of each of the parties, the Chancellor took the matter under advisement.
On October 16, 1981, Chancellor Bullard released an opinion containing findings of fact and conclusions of law and providing in essence that PMZ Oil Co. would be enjoined from constructing the townhouses on Lot 3 and from violating in other ways the restrictive covenants in question. The Chancellor's opinion further provided:
"Defendants will be further mandatorily enjoined to record in the land records of Warren County in the Office of the Chancery Clerk the restrictive covenants as they appear in the deed to Mr. and Mrs. Lucroy as covenants running with the land applicable to the land described by metes and bounds that constitute Lots 1-8 of Raintree Subdivision (unrecorded), or as applicable to said lots if defendant elects to record the plat of said Raintree Subdivision."
In due course the parties presented to Chancellor Bullard a decree the form of which each had approved, which decree in turn was entered by the Chancellor on November 20, 1981. That decree carried into effect the essence of the opinion which had previously been released by Chancellor Bullard.

III.

A.
Agrieved at the Chancellor's injunction, PMZ Oil Co. appeals to this Court and presents a single assignment of error, to wit:
The Court erred in granting the Appellees the relief prayed for in their complaint, based upon estoppel, in the absence of proof of reliance to their detriment on the contended actions of Appellant.
The decree appealed from did not purport to enforce any legal right vested in the Lucroys. The Chancellor in no way held that the covenants imposed legal restrictions upon the use of Lot 3 (or any of the other lots still owned by PMZ Oil Co.), as would have been the case had the plat and covenants been formally approved by the Board of Supervisors of Warren County and filed for record in the land records of Warren County, Mississippi. Rather, the Chancellor held:

*205 "This arises as a matter of equity and fair dealing  defendant (PMZ) having represented that the covenants applied to the whole unrecorded subdivision and having followed that general scheme halfway, is now estopped to deny that the lots remaining are subject to the same restrictions for the benefit of those who dealt with defendant in reliance on those representations.
By its assignment of error, PMZ challenges the Chancellor's implicit fact finding that the Lucroys relied upon PMZ/Pinkston's representations. PMZ in no way challenges the fact finding that the representations were made.
We regard the issue as a relatively simple one, factually. The Lucroys were interested in building a new residence in a quality subdivision. They had reviewed the plans of the proposed Raintree Subdivision, specifically including the plan for 16 lots each of which would be restricted in use to the construction of a single-family dwelling. The Lucroys were the third family to move into Raintree. When they began their construction, two other dwellings were already in place. In that the Lucroys had taken care to ascertain PMZ's plan for the subdivision as a whole, it defies common sense to suggest that they proceeded to make the substantial investment of construction of a new home without caring whether the covenants would be enforced as to other lots.

B.
It is no secret that we sit as an appellate court, not as triers of the facts ab initio. Our scope of review of findings of fact is severely limited. Findings of fact made by a chancellor which are supported by credible evidence, or reasonable inferences which may be drawn from credible evidence, may not be set aside on appeal. Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983); Culbreath v. Johnson, 427 So.2d 705, 707-708 (Miss. 1983). This is particularly true when, as here, we are concerned with a finding of fact substantially involving an individual's state of mind  we regard the question of whether the Lucroys relied to their detriment as essentially involving the question of what was in their minds when they constructed their home.
To be sure, the Chancellor never found specifically that the Lucroys relied upon the representations of PMZ/Pinkston regarding the protective covenants. The Chancellor's opinion does state that:
"Petitioners (the Lucroys) contend they purchased their lot in reliance on the representation that it would be in an exclusive single-family residential subdivision, protected by restrictive covenants, ...."
The Chancellor further stated in his opinion that:
"Defendant having represented that the covenants applied to the whole unrecorded subdivision, and having followed that general scheme halfway, is now estopped to deny that the lots remaining are subject to the same restrictions for the benefit of those who dealt with defendant in reliance on those representations."
The failure of the Chancellor to make an express finding of detrimental reliance on the part of the Lucroys is by no means fatal. Such a finding necessarily had to be made for the Chancellor to reach the result he reached, considering the view of the law articulated in his opinion. Taking that opinion as a whole, this finding of fact is implied. Where there are issues of fact resolution of which is essential to the judgment but with respect to which the chancellor makes no specific finding, we are required by our prior decisions and by sound institutional considerations to proceed on the assumption that the chancellor resolved all such fact issues in favor of appellee. Harris v. Bailey Avenue Park, 202 Miss. 776, 791, 32 So.2d 689, 694 (1947); Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983).

IV.

A.
The decision below was grounded in the familiar principle of equitable estoppel. *206 We have reviewed the precedents in this state and find that we have no prior decision in which an estoppel has been invoked to enforce compliance with unrecorded protective covenants restricting land use. Our cases setting out the general concept of equitable estoppel, however, provide a useful and dispositive framework for our decision today.
We are concerned here with a doctrine which has its roots in the morals and ethics of our society. See Kelso v. Robinson, 172 Miss. 828, 840, 161 So. 135, 137 (1935); Stokes v. American Central Insurance Co., 211 Miss. 584, 589, 52 So.2d 358, 360 (1951). Fundamental notions of justice and fair dealings provide its undergirding. Whenever in equity and good conscience persons ought to behave ethically toward one another the seeds for a successful employment of equitable estoppel have been sown.
Adding flesh to the idea, the courts of this state have always, in proper cases, been prepared to
"hold a person to a representation made or a position assumed where otherwise inequitable consequences would result to another who, having the right to do so under all of the circumstances of the case, has in good faith relied thereon and been misled to his injury." Stokes v. American Central Insurance Co., supra, 211 Miss. at 589, 52 So.2d at 360.
A party asserting equitable estoppel must show (1) that he has changed his position in reliance upon the conduct of another and (2) that he has suffered detriment caused by his change of his position in reliance upon such conduct. Birmingham v. Conger, 222 So.2d 388, 392-393 (Miss. 1969); Thomas v. Bailey, 375 So.2d 1049, 1052 (Miss. 1979); Ivy v. Grenada Bank, 401 So.2d 1302, 1303 (Miss. 1981). In this context if PMZ's conduct was substantially likely to cause the Lucroys, acting reasonably in their own right, to make the substantial investment of constructing their home on Lot 11 of the Raintree Subdivision, PMZ is estopped to deny or abrogate the covenants. See Alabama Great Southern Railway Co. v. McVay, 381 So.2d 607, 612 (Miss. 1980).
Our approach to equitable estoppel is consistent with that throughout the country. We find wholly consistent with our law the articulation of the doctrine by the Supreme Judicial Court of Massachusetts in McLearn v. Hill, 276 Mass. 519, 177 N.E. 617, 77 A.L.R. 1039 (1931) as follows:
"In order to work an estoppel it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done, and which has resulted to his harm and that the other knew or had reasonable cause to know that such consequence might follow. But the doctrine of equitable estoppel is not applied except when to refuse it would be inequitable. The law does not regard estoppels with favor, nor extend them beyond the requirements of the transactions in which they originate." 276 Mass. at 524, 177 N.E. at 619.
It is suggested here that the covenants may not be enforced against PMZ because they have not been signed by PMZ. Without doubt, our statute of frauds provides that no contract for the conveyance of an interest in land is binding unless signed by the party to be charged. Miss. Code Ann. § 15-3-1(c) (1972). Equitable estoppel, however, is a well-established exception to our statute of frauds. Our cases have repeatedly held that, where the elements of equitable estoppel are present, the statute of frauds constitutes no bar to enforcement of that to which a party has agreed. See Martin v. Franklin, 245 So.2d 602 (Miss. 1971); Sanders v. Dantzler, 375 So.2d 774, 776-777 (Miss. 1979).

B.
Of importance here is whether, in order that it be subjected to an equitable estoppel, PMZ and its president Pinkston had in mind a fraudulent intent or scheme at the time of the negotiations and ultimately sale to the Lucroys. There is some loose talk in our opinions to the effect that such intent *207 must have been present. See Perrien v. Mapp, 374 So.2d 794, 797 (Miss. 1979); Perkins v. Kerby, 308 So.2d 914, 917 (Miss. 1975); Crowe v. Fotiades, 224 Miss. 422, 80 So.2d 478, 486 (1955).
The better view is that an equitable estoppel may be enforced in those cases in which it would be substantially unfair to allow a party to deny what he has previously induced another to believe and take action on. Our early case of Staton v. Bryant, 55 Miss. 261, 273 (Miss. 1877) suggests that one such as PMZ may not "change his attitude" to the substantial detriment of another and avoid an estoppel on grounds that at the outset his heart was pure. It is sufficient if the acts of the party sought to be estopped, although made without subjective intent to mislead, were, objectively speaking, calculated to mislead, and did mislead.
Fraudulent intent to mislead or deceive where present may often, when relied upon, produce inequity and hence an estoppel. This does not mean that no estoppel may be enforced absent such intent ab initio. For there are cases, of which this is one, where there has resulted substantial inequity produced by a change of attitude sans original subjective fraudulent intent. Substantial inequity is our touchstone. Izard v. Mikell, 173 Miss. 770, 774, 163 So. 498, 499 (1935).
We find appropriate what has been said on this point by the Supreme Court of New Jersey in Howard v. West Jersey and Seashore Railroad Co., 102 N.J. Eq. 517, 141 A. 755 (1928), to-wit:
"... [I]t should be noted that, while the doctrine of estoppel in pais rests upon the ground of fraud, it is not essential that the representations or conduct giving rise to its application should be fraudulent in the strictly legal significance of that term, or with intent to mislead or deceive; the test appears to be whether in all the circumstances of the case conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct; whether the author of a proximate cause may justly repudiate its natural and reasonably anticipated effect; fraud, in the sense of a court of equity, properly including all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another."
102 N.J. Eq. at 521, 141 A. at 757; Looney v. Trimount Theaters, 282 Mass. 275, 184 N.E. 683, 685 (1933). See Deposit Guaranty National Bank of Jackson v. Prudential Insurance Co. of America, 195 So.2d 506, 511 (Miss. 1967).

V.
In this case PMZ Oil Co., acting through its president Murray Pinkston, represented first to the Lucroys' agent, realtor Ernest Thomas, and then to the Lucroys themselves, that he planned an exclusive residential subdivision in Raintree. PMZ represented that the protective covenants would apply to all lots and that one of those covenants would be that in question here  the one restricting construction on each lot one single-family dwelling. Objectively speaking, PMZ and its officers should reasonably have anticipated that these representations would induce persons such as the Lucroys first to buy lots and then to build their homes. Prospective home builders such as the Lucroys, as a matter of common sense, should reasonably be expected not only to rely on such representations regarding protective covenants but to insist upon such covenants before undertaking the substantial investment that construction of a residence involves in this day and time.
Applying the doctrine of equitable estoppel, the Chancery Court held that PMZ Oil Co., as the subdivision's developer, in good conscience may not be allowed to disregard the covenants it had imposed upon others to whom it sold lots. We note that the evidence is uncontradicted that PMZ made similar representations to all lot purchasers in the Raintree Subdivision. The same covenants *208 were included in every other deed to a third party. Without exception PMZ had represented that these covenants would apply to all lots in the Raintree Subdivision. Mr. Pinkston, PMZ's president, acknowledged that this was probably his original plan although he insisted that he never considered any of his plans to be final. These facts are more than sufficient to undergird the Chancery Court's enforcement of an estoppel against PMZ.
The point was well made by the Supreme Court of New Mexico in a legally analogous context in Ute Park Summer Homes Association v. Maxwell Land Grant Co., 77 N.M. 730, 427 P.2d 249 (1967).
The rationale of the rule is that a grantor, who induces purchasers, by use of a plat, to believe that streets, squares, courts, parks, or other open areas shown on the plat will be kept open for their use and benefit, and the purchasers have acted upon such inducement, is required by common honesty to do that which he represented he would do. It is the use made of the plat in inducing the purchasers, which gives rise to the legally enforceable right in the individual purchasers, and such is not dependent upon a dedication to public use, or upon the filing or recording of the plat. 427 P.2d at 251.
In its brief PMZ seeks comfort in the fact that the contract of sale had been signed by the Lucroys before Pinkston personally described to them PMZ's plans for the subdivision. This PMZ argues undermines the Chancellor's implicit detrimental reliance finding. The point fails, however, when it is remembered that Pinkston described his plans in full, including the protective covenants, to Ernest Thomas, the Lucroys' agent, before the contract of sale was signed.
We note that in a sister state covenants have been enforced against persons with actual knowledge of the "general plan or scheme" of a subdivision. Jones v. Cook, 271 Ark. 870, 611 S.W.2d 506 (1981). This rule has been applied when the protective covenants have been contained in the deed to all knowing parties and also when the deed contains no covenants at all. Johnson v. Mt. Baker Park Presbyterian Church, 113 Wash. 458, 194 P. 536 (1920); see also, Hagan v. Sabal Palms, Inc., 186 So.2d 302 (Fla.App. 1966). If a subsequent purchaser with knowledge of the general plan or scheme may be bound, surely the original developer who created the general plan or scheme in the first place, must be bound. See Tuttle v. Ohio Boulevard Land Co., 245 Mich. 188, 222 N.W. 171 (1928); and Ute Park Summer Homes Association v. Maxwell Land Grant Co., 77 N.M. 730, 427 P.2d 249, 252-255 (1967).

VI.
Nothing we say here does violence to any principle or rule of law eminating from our recording statutes. Interests in land do not become perfected against third persons until such time as the instrument creating the interest shall have been recorded in the office of the proper chancery clerk.
Equity acts in personam, and in this instance equity has acted in personam. Where within the rules of law described above a court of equity determines that an estoppel should be enforced, it is entirely appropriate that the defendant should be personally directed to do that which is necessary to achieve compliance with the condition upon which the plaintiff has relied to his detriment.
Equity regards as done that which ought to be done. Burnett v. Burnett, 362 So.2d 828, 830 (Miss. 1978); Mahaffey v. First National Bank, 231 Miss. 798, 821, 97 So.2d 756, 765 (1957). What ought to be done here is that the covenants should be recorded and enforced against one and all.
In the case at bar the Chancery Court has issued a personal decree enjoining PMZ Oil Co.
(a) from violating with respect to any of the lots it owns in the Raintree Subdivision, any of the provisions of the protective covenants contained in the deeds given to the parties who now own Lots 9-16;
*209 (b) to record and place of record the plat of the Raintree Subdivision along with the protective covenants, all in the manner contemplated by the statutes;
(c) to include in the deeds conveying Lots 1-8 or any other lot within the subdivision it may own, the same protective covenants.
Considering the Chancellor's findings of fact together with all reasonable inferences we may draw therefrom, to the extent that all of same are supported by substantial evidence, in the light of the principles of law announced above, our duty in this case becomes clear: the final decree of the Chancery Court of Warren County, Mississippi must be, and is, affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and SULLIVAN, JJ., concur.