## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-00866-SCT

*THOMAS S. WEEMS, JR.*

*v.*

*TRANSAMERICA MORTGAGE COMPANY AND ADAMS & EDENS LAW FIRM*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/19/1999 |
| TRIAL JUDGE: | HON. WILLIAM JOSEPH LUTZ |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMES L. POWELL |
| | XAVIER M. FRASCOGNA, JR. |
| ATTORNEY FOR APPELLEES: | FRANK D. EDENS, SR. |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 5/25/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/15/2000 |

**BEFORE PITTMAN, P.J., McRAE AND SMITH, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Thomas S. Weems, Jr. appeals from the opinion and final judgment issued by the Chancery Court of Madison County, Mississippi, on February 19, 1999, dissolving a temporary restraining order against Transamerica Mortgage Company (Transamerica) and denying Weems's request for a preliminary injunction and permanent injunction to set aside the foreclosure of Weems's property.

### STATEMENT OF THE FACTS

¶2. On August 12, 1996, Thomas S. Weems, Jr. executed a promissory note to Realty Mortgage Corporation and a Deed of Trust on a condominium at the Breakers to Michael L. Riddle, Trustee, with Realty Mortgage Corporation as Beneficiary. The Deed of Trust was subsequently assigned to Transamerica with Lem Adams, III substituted as Trustee by Transamerica.

¶3. Weems is a catastrophe insurance adjuster who spends much of his time away from home and has experienced difficulty in retrieving his mail and maintaining communication with his creditors. In fact, Weems regularly defaulted on his mortgage payments but never allowed such arrearage to exceed sixty days. During the course of their dealings, Transamerica made sixty-three telephone calls and sent thirteen letters to Weems concerning his account.

¶4. On July 7, 1997, Weems issued a personal check to Transamerica for $1,085 as his monthly mortgage payment. Transamerica returned his check due to insufficient funds and informed Weems that personal

checks would not be accepted for subsequent payments for a period of one year. Weems made subsequent payments in the form of certified checks until May 13, 1998, when Weems forwarded a personal check to satisfy his May payment obligation. Transamerica accepted and negotiated this check.

¶5. Subsequently, Weems defaulted on his June and July mortgage payments. A letter dated July 6, 1998, was sent by Transamerica to Weems's address informing him that he was two months in default and that acceleration of the loan would occur within thirty days if he did not bring his account to date. On July 30, 1998, Weems wrote a check to Transamerica for $3,200 and forwarded it via Federal Express on that same day. (Weems contends that it was sent overnight delivery but did not arrive on July 31.). Transamerica records show that the check was received on August 3, 1998, and the payment was rejected by Transamerica in a letter dated August 4, 1998. The letter suggested that Weems's payment was rejected because it was in the form of a personal check and it was not for the full amount since the August payment was also due at the time payment was received.

¶6. On August 18, 1998, Transamerica referred the matter to the law firm of Adams & Edens for foreclosure. Weems issued another personal check to Transamerica in the amount of $2,935.16 which Transameica received on or about October 1, 1998. This payment was also rejected by Transamerica and forwarded to Adams & Edens for return to Weems. A notification letter was sent to Weems by regular mail on October 6, 1998, informing Weems that the foreclosure would be held on November 6, 1998. Foreclosure was completed on that date in which the property was auctioned to Transamerica.

¶7. On December 29, 1998, Weems filed for and was granted a temporary restraining order prohibiting the sale, occupation or removal of any personal property from the subject premises. After a hearing on the preliminary and permanent injunction to set aside the foreclosure of the property, the temporary restraining order was dissolved and the request for a preliminary and permanent injunction denied. On March 1, 1999, Weems filed his motion for rehearing and clarification. This motion was heard and denied on March 29, 1999, and Weems timely appealed.

## STATEMENT OF THE ISSUES

**I. WHETHER THE CHANCELLOR COMMITTED ERROR IN ALLOWING TRANSAMERICA TO REJECT A MORTGAGE PAYMENT BECAUSE SUCH PAYMENT WAS A PERSONAL CHECK AND NOT CERTIFIED FUNDS.**

**II. WHETHER THE CHANCELLOR ERRED IN APPLYING ALABAMA CASE LAW AND IN FAILING TO CONSIDER OTHER ARGUMENTS IN ORDER TO DETERMINE WHETHER THE CHECK WAS PROPERLY RETURNED.**

## DISCUSSION

**I. WHETHER THE CHANCELLOR COMMITTED ERROR IN ALLOWING TRANSAMERICA TO REJECT A MORTGAGE PAYMENT BECAUSE SUCH PAYMENT WAS A PERSONAL CHECK AND NOT CERTIFIED FUNDS.**

¶8. On July 21, 1997, Transamerica notified Weems via letter that due to his NSF check in July 1997, subsequent payments must be made by certified funds for a period of one year. The chancellor found that the period ran from August 1, 1997, to July 1, 1998, bringing the June-July payments in dispute within that time frame. In May 1998, Transamerica accepted and negotiated a personal check from Weems for his

May mortgage payment. The June-July payments were mailed by Weems on July 30, 1998, and received by Transamerica on August 3, 1998.

¶9. Weems argues that principles of equity estop Transamerica from refusing his June-July payment because it had previously accepted and negotiated a personal check from Weems and that he relied on this action to his detriment by making subsequent payments in the form of a personal check. See *PMZ Oil Co. v. Lucroy*, 449 So.2d 201, 206 (Miss. 1984). Weems also contends that Transamerica had no authority under the Note or the Deed of Trust to alter the form of his payment.

¶10. Transamerica received the June-July payment on August 3, 1998. This date of receipt falls outside the one-year period in which Weems was to make payment by certified funds.[1] The letter did not state, and there is no reason to infer, that late payments made outside the time frame specified by the letter would be subject to the condition of certified funds. Consequently, the argument that certified funds were required is without merit.

¶11. Furthermore, while the Note clearly leaves the acceptance of the form of payment to the discretion of Transamerica, Transamerica accepted and negotiated a personal check from Weems in May 1998. Weems relied on this action to his detriment when he sent his June-July payment in the form of a personal check, regardless of the fact that he had prior knowledge that Transamerica demanded certified funds. Transamerica's acceptance of the May payment estops it from refusing the June-July payments merely because they were not in the form of certified funds. Thus, the chancellor erred to the extent that he held otherwise.

### II. WHETHER THE CHANCELLOR ERRED IN APPLYING ALABAMA CASE LAW AND IN FAILING TO CONSIDER OTHER ARGUMENTS IN ORDER TO DETERMINE WHETHER THE CHECK WAS PROPERLY RETURNED.

¶12. Weems asserts that the combination of Miss. Code Ann. §§ 89-1-59 (1991) and 75-17-27 (1991) bars Transamerica from foreclosing on his property. Section 89-1-59 states that a note containing an acceleration clause may be redeemed prior to sale if all amounts due, past and present, are paid. Section 75-17-27 provides for a fifteen-day grace period from the date the payment is *past due* before a late charge may be levied. Weems argues that § 75-17-27 affords not only a grace period for the application of late charges but a grace period at which a payment is due. Based on this combination of § 75-17-27 and § 89-1-59, Weems's August 1, 1998, payment would not have been due until August 16, 1998, making his June-July payment timely and bringing his account current. Weems contends that this is the interpretation the chancellor should have employed rather than the interpretation based on Alabama case law.

¶13. The chancellor faced a question unanswered in Mississippi jurisprudence and for assistance he turned to an Alabama case, *Auto-Plaza, Inc. v. Central Bank of Ala., N.A.*, 394 So.2d 6 (Ala. 1980), which addressed the same issue. In *Auto-Plaza*, Central Bank had refused a payment that was six days late and accelerated the loan. The Alabama Supreme Court scrutinized a mortgage agreement which provided for a fifteen-day grace period prior to the assessment of a late charge on delinquent payments. The Alabama Supreme Court concluded that a provision which clearly addressed a grace period for the assessment of late charges on past due payments in no way implied a grace period for when the payment was due. The foreclosure stood. The chancellor in the present case relied upon this decision as persuasive authority in reaching his decision, not as binding authority. Such action was not in error.

¶14. Weems seeks to distinguish *Auto-Plaza* from the instant case, arguing that the Alabama Supreme Court had no basis in statutory law to find that a grace period for a payment due date existed. Weems points to § 75-17-27 as Mississippi statutory authority for finding such a grace period. The substance of this statute and the mortgage provision in *Auto-Plaza*, however, are the same. Weems's interpretation of § 75-17-27 is strained. The legislature provided a safety net for debtors laboring under acceleration clauses in § 89-1-59. This Court will not undermine legislative discretion by adopting a strained reading of § 75-17-27 to further aid debtors, especially when the power to contract provides debtors the means by which to achieve a grace period for a payment due date.

¶15. A plain reading of the statute clearly indicates a grace period for the imposition of late fees on payments past due. The statute in no way supports the theory that this grace period affects due dates or the condition of default. A cursory inspection of the statute clearly reveals this conclusion, and the consideration of *Auto-Plaza* by the chancellor evinces caution and good judgment, rather than blind reliance. The chancellor did not err in his reading of the statute, nor did he err by looking to our sister state for persuasive authority.

¶16. Since § 75-17-27 does not provide a grace period extending the payment due date, Weems's August 1, 1998, payment was in default according to the terms of the Note and Deed of Trust. Consequently, to cure this default, payment for June, July and August was needed. Weems argues that based on the letter sent by Transamerica on July 6, 1998, acceleration of the principal would not occur until August 5, 1998, and thus his payment sent July 30 and received August 4 was within the thirty days, making acceleration inapplicable.

¶17. Weems succeeds only in confusing the issue. The letter of July 6, 1998, states that his June-July payments were due in the amount of $2,969.16 and that failure to remit the entire amount would result in acceleration within thirty days of the date of the letter, placing the acceleration date at August 5, 1998. The letter, however, also states that, "If any other charges or payments become due prior to the time you attempt to cure the default, they will need to be added to this figure." The date of acceleration does not change the amount owed or the time of payment. Each payment is due on the first of each month. To cure default all outstanding monthly payments must be made. The check for June-July was not received until August 3, 1998, a point at which the August payment was due as well.

¶18. This discrepancy was noted in the August 4, 1998, letter Transamerica sent to Weems: "Please note the amount you owe on the loan as of the date of this letter. If another payment or late charge becomes due, you will need to include this as well. No less than this amount will be accepted." The amount listed in the letter was $4,451.74. Failure to remit the full amount upon the due date was clearly an appropriate reason for Transamerica to reject Weems's payment. Without full payment, Weems defaulted on his Note and Deed of Trust, and acceleration was proper. Therefore, the chancellor did not err in denying Weems relief against the resulting foreclosure.

## CONCLUSION

¶19. For the foregoing reasons, the judgment of the Chancery Court of Madison County is affirmed.

¶20. **AFFIRMED.**

    **PRATHER, C.J., BANKS, P.J., McRAE, SMITH, MILLS, WALLER, COBB AND DIAZ,**

**JJ., CONCUR.**

1. In his opinion, the chancellor stated that the one-year time frame for requiring certified funds ran from August 1, 1997, to July 1, 1998.