GRIFFIS, P.J.,
for the Court:
¶ 1. Ernest and Bonnie Harland purchased three lots within phase three of the Long Meadow subdivision, a residential subdivision in Lafayette County, Mississippi, with the intention of building a church on the property. The Long Meadow Homeowners’ Association, Inc. objected to the building of a church and claimed that the protective covenants applicable to oth *594 er lots within phases one and two of the subdivision did not permit the building of a church.
¶ 2. The Harlands filed suit in the Lafayette County Chancery Court and asked the court to determine whether a church could be built on the property they had purchased. The court found in favor of the Harlands. The Homeowners’ Association appealed and asserted several issues: (1) whether protective covenants imposed on phase one and phase two are also applicable to phase three, (2) whether the court erred in refusing to estop the Harlands from building a church on the property, (3) whether the court erred in granting the Harlands’ motion to set aside the corrected warranty deed, and (4) whether the court erred in holding the covenants filed with the original warranty deed were valid. We find no error and affirm.
FACTS
¶ 3. The Long Meadow subdivision was developed by Robert and Carroll Leavell. It is composed of forty-nine separate platted lots. The Leavells developed the subdivision in three distinct phases.
¶ 4. In 1993, plats for the first two phases of the subdivision were prepared and filed for record in the chancery clerk’s office. These plats included protective covenants that permitted the property to be used for residential purposes only. The covenants defined residential use as one single-family residence for each four acres.
¶ 5. In 1994, a plat for phase three was filed for record in the chancery clerk’s office. Phase three encompassed lots one to twelve, and the plat did not include any protective covenants.
¶ 6. As phase three was being developed, the Leavells included certain covenants and restrictions in each individual deed. Of the twelve lots in phase three, the deed for nine of the lots included a protective covenant that permitted only residential use, and it defined residential use to include the building of churches and schools. The deed for two lots included a protective covenant that permitted only residential use, but it defined residential use to include one single-family dwelling structure for each four acres. The deed for the remaining lot included a protective covenant that permitted only residential use, but it defined residential use to include single- or double-family dwelling structures.
¶ 7. The Harlands were interested in the purchase of three lots within phase three to build a church. They approached the Leavells and discussed a possible transaction. In November 2006, the Harlands made an offer to the Leavells to purchase the three lots. The Harlands’ contract included a contingency agreement, which stated that the contract would be considered void if construction of a church was not permissible. The contract read: “If a church cannot be built on the property, that is to say if this permission to build a church has not been obtained by May 15, 2007, this contract is voidable at the option of the Purchasers and the $5,000.00 earnest money will be returned.”
¶ 8. Consistent with the covenants included in previous deeds,[1] the Leavells included a protective covenant in the deed that specified that the property could be used for residential use only and defined the term residential use to include churches and church buildings.
*595 ¶ 9. On February 5, 2007, when they learned of the Harlands’ intention to build a church on the property, members of the Homeowners’ Association registered their objections to the building of a church within the subdivision. Despite knowledge of the objections, the Leavells conveyed lots two, three, and four to the Harlands by a deed, which included a covenant that specifically permitted the building of a church. The language of the deed stated: “Only residential structures shall be permitted on these acres. The term ‘residential’ shall include churches and shall not prevent structures used for church purposes.” The deed was recorded in the county land records on May 22, 2007.
¶ 10. On May 28, 2008, counsel for the Homeowners’ Association prepared a corrected warranty deed. The corrected warranty deed included covenants that allowed only one single-family residential structure for each four acres. A copy of the proposed corrected warranty deed was provided to the Leavells, with the request that the Leavells execute and deliver the deed to the Harlands. The Harlands notified the Leavells that they declined to accept the terms of the proposed corrected warranty deed. The proposed corrected warranty deed was recorded among the land records on July 15, 2008. The corrected warranty deed would change the covenants in the Harlands’ deed to prohibit the building of a church.
¶ 11. The Harlands filed a lawsuit and asked the court to set aside the corrected warranty deed, vacate lots two, three, and four from the official plat of the subdivision or validate the protective covenants included in their deed, which allowed a church to be constructed on the subject property. The chancellor ruled in favor of the Harlands. The chancellor validated the covenants included within the original conveyance and set aside the corrected warranty deed. It is from this judgment that the Homeowners’ Association appeals.
ANALYSIS
¶ 12. The chancellor’s findings of fact shall not be disturbed on appeal unless the findings are “manifestly wrong, clearly erroneous, or not supported by substantial credible evidence.” City of Picayune v. S. Reg’l Corp., 916 So.2d 510, 518 (¶ 22) (Miss.2005) (citing Brown v. Miss. Dep’t of Human Servs., 806 So.2d 1004, 1005 (¶ 4) (Miss.2000)). While deference is given to the chancellor’s determinations of fact, this Court retains a de novo review of all questions of law. Id. at 519 (¶23).

1. Subdivision Covenants

¶ 18. The Homeowners’ Association argues that the covenants imposed on phase one and phase two should also apply to phase three. The Homeowners’ Association alleges that the Leavells represented to residents within the subdivision that the entirety of the property would be governed by covenants which allowed the development of only one single-family residential structure for each four acres.
¶ 14. For the covenants imposed on phase one and phase two to apply to phase three, the covenants must be real covenants and run with the land. Vulcan Materials Co. v. Miller, 691 So.2d 908, 913 (Miss.1997). The Mississippi Supreme Court has held that a covenant must meet the following criteria to run with the land: “(1) the covenanting parties must intend to create such covenant; (2) privity of estate must exist between the person claiming right to enforce the covenant and the person upon whom burden of covenant is to be imposed; and (3) the covenant must ‘touch and concern’ the land in question.” Hearn v. Autumn Woods Office Park *596 Prop. Owners Ass’n, 757 So.2d 155, 158 (¶ 12) .(Miss.1999).

A.Intent

¶ 15. The record provides no evidence to suggest that the Leavells intended for the covenants imposed on phase one and phase two to apply to phase three. The Leavells recorded protective covenants when filing the plats for phases one and two, but the Leavells chose not to record covenants when filing the plat for phase three. Instead, covenants were included within the deeds to each individual lot. Of the twelve lots located in phase three, nine were conveyed by a deed including a protective covenant that permitted only residential use and defined the term residential use to include churches and schools. Of those nine, five lots were conveyed by deeds that were recorded pri- or to the Harlands’ expression of interest in purchasing property. Two lots within phase three were conveyed with covenants that allowed the development of only one single-family residential structure for each four acres. The one remaining lot within phase three was conveyed with covenants permitting single-or double-family residences.
¶ 16. The Leavells conveyed the property to the Harlands and included a covenant in the deed that specifically permitted construction of a church on the property, stating:
The term “residential” shall include churches and shall not prevent structures used for church purposes. The term “residential” shall also include public or private utility structures, garages or carports, storage buildings and the like which usually accompany residential structures.
¶ 17. We agree with the chancellor’s holding that the intent of the Leavells was not to impose the same covenants referenced within phase one and two, but to vary the covenants within phase three according to the individual lots.

B.Privity of Estate

¶ 18.' With respect to the covenants governing phase one and phase two of the subdivision, privity of estate was not established when the Leavells sold the lots within phase three to the Harlands. The covenants imposed on phase one and phase two of the subdivision were not incident to the original conveyance between the Lea-vells and the Harlands. The deeds issued to the Harlands neither included nor referenced the covenants imposed on phase one and phase two.

C.Touch and Concern the Land

. ¶ 19. The covenants imposed on phase one and two do not touch and concern the land within phase three of the subdivision. For a covenant to touch and concern the land, it “must be so related to the land as to enhance its value and confer a benefit upon it, or, conversely, impose a burden on it.” Vulcan Materials, 691 So.2d at 914. The subdivision was divided into three separate phases. The three phases were developed at different times and governed by different covenants. The record does not suggest that the covenants governing phase one and two “touch and concern the land” within phase three.
¶ 20. The Homeowners’ Association failed to prove that the Leavells intended for the covenants imposed on phase one and phase two of the subdivision to also be applied to phase three. The lots within phase three were sold without including or referencing the covenants applicable to phase one and two. The record indicates that privity of estate was not established and that the covenants applicable to phase one and two do not concern the land in phase three. Accordingly, we do not conclude the chancellor’s findings were manifestly wrong, clearly erroneous, or not sup *597 ported by substantial credible evidence. This issue is without merit.

2. Equitable Estoppel

¶ 21. The Homeowners’ Association next argues that the Harlands and any successive owners of lots two, three, and four should be equitably estopped from building a church or any structure besides a single-family residence on the property. To prevail on a claim of equitable estoppel, the Homeowners’ Association must prove that: (1) they changed their position in reliance upon the conduct of another, and (2) they suffered detriment caused by that change of position in reliance upon such conduct. PMZ Oil Co. v. Lucroy, 449 So.2d 201, 206 (Miss.1984). The chancellor held that there was a lack of reliance on behalf of the Homeowners’ Association. The chancellor ruled:
There appears nothing in the public records of Lafayette County, Mississippi, upon which the Respondents could rely for assurances as to the restrictions of phase 3. The one exception to this would be the individual restrictive covenants attached to the deeds sold by the Lea-vells. As such, the Petitioners herein when researching the public records of Lafayette County, Mississippi, were reasonable in determining that as no specific covenants in connection with phase 3 were recorded and other deeds conveyed by the Leavells allowed the construction of churches in phase 3, to rely thereon.
¶ 22. No covenants were recorded with respect to phase three. Instead, the Lea-vells conveyed each individual lot subject to covenants as deemed appropriate through negotiation. The restriction within the deeds conveying nine of the lots within phase three, allowed the construction of a church. Thus, we do not conclude that the chancellor’s findings were manifestly wrong, clearly erroneous, or not supported by substantial credible evidence. Indeed, the Homeowners’ Association failed to meet the first element, reliance, necessary to prevail on their claim of equitable estoppel. This issue is without merit.

3. Warranty Deed

¶23. The Homeowners’ Association argues that the chancellor erred in granting the Harlands’ motion to set aside the corrected warranty deed. In order for a deed to be valid, it must be both delivered to and accepted by the grantee. Martin v. Adams, 216 Miss. 270, 277, 62 So.2d 328, 329 (1953).
¶ 24. The Harlands purchased their property with the intent to construct a church on the property, and this conduct was opposed by the Homeowners’ Association. Because of the Homeowners’ Association’s opposition, counsel for the Homeowners’ Association prepared a proposed corrected warranty deed, which prohibited the construction of a church on the property. A copy of the proposed corrected warranty deed was provided to the Leavells, with the request that the Leavells execute and deliver the deed to the Harlands. The Leavells’ attorney was notified via telephone that the Harlands did not agree to accept the terms of the proposed corrected warranty deed. Notwithstanding the Har-lands’ refusal to accept the proposed corrected warranty deed, it was executed by the Leavells and filed in the land records of Lafayette County. The Harlands had no knowledge the deed was recorded. The record clearly indicates there was no acceptance of the deed by the grantee. Thus, the proposed corrected warranty deed was void, and it did not alter the terms of the prior conveyance. This issue is without merit.
A Covenants Imposed on the Har-lands’ Property
¶ 25. The Homeowners’ Association argues that the covenant in the deed from *598 the Leavells to the Harlands should be declared null and void, insofar as it defines the term residential to mean churches and church-related structures.
¶26. The chancellor held the original deed was valid and recognized that the covenants, which were included within the original deed, are the only covenants applicable to the Harlands’ property. The original deed including its protective covenants was a valid conveyance from the Leavells to the Harlands, which was duly recorded. We do not conclude that the chancellor’s findings were manifestly wrong, clearly erroneous, or not supported by substantial credible evidence. Accordingly, this issue is without merit.
¶ 27. THE JUDGMENT OF THE LAFAYETTE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING, P.J., ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. BARNES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. MYERS AND MAXWELL, JJ., NOT PARTICIPATING.

. The record indicates that the deeds for lot six, filed on October 26, 2004, and lot nine, filed on June 22, 2006, both included covenants specifying the property for residential use only and defining the term residential as including churches.