ON WRIT OF CERTIORARI

WALLER, Chief Justice,
for the Court:
¶ 1. Ernest and Bonnie Harland filed suit in the Chancery Court of Lafayette County seeking to have a “corrected” warranty deed set aside; to vacate three lots from the official plat of Long Meadow subdivision; or to validate the protective covenants included with their original deed. The chancellor set aside the “corrected” warranty deed and validated the Harlands’ original covenants. The Long Meadow Homeowners’ Association appealed the chancellor’s judgment, and we assigned the case to the Court of Appeals. The Court of Appeals, finding no error, affirmed the judgment of the chancery court. Long Meadow Homeowners’ Ass’n, Inc., et al. v. Harland, 89 So.3d 591 (Miss.Ct.App.2011). This Court granted Long Meadow’s Petition for Writ of Certiorari. Long Meadow, 78 So.3d 906 (Table) (Miss.2012). Having reviewed the briefs and record in this appeal, we now affirm the Court of Appeals and the chancery court. We provide this opinion to discuss our precedent as it relates to the defendants’ equitable-estoppel claim.
FACTS AND PROCEDURAL HISTORY
¶ 2. Long Meadow subdivision is located outside of the City of Oxford in Lafayette County. Because Long Meadow is in the county, it is not subject to any zoning regulations. Long Meadow was developed by Robert and Carroll Leavell and their daughters. The subdivision is composed *575 of forty-eight[1] lots, and each lot is approximately four acres. The subdivision was developed in three distinct phases. The original plat for Phase I and Phase II, showing Lots 14-46, was recorded in the land records in 1990. In 1991, restrictive covenants for Phase II were filed in the land records and recorded in deed book 412 at page 366, with the title “Protective Covenants of Long Meadow Subdivision Phase II.” The Phase II covenants provided, in pertinent part:
We, the owners of the land described in the Long Meadow Subdivision Plat filed for record and recorded in the office of the Chancery Court Clerk of Lafayette County, Mississippi, and which comprises a subdivision in Lafayette County, Mississippi, do hereby establish, charge, and place upon said land the hereinafter described protective covenants.
1. No structure shall be erected, placed or permitted to remain on any lot other than one single family residential structure for each four (4) acres of land....
These covenants were adopted by Phase I in 1993 when the plat for Phases I and II, showing Lots 14^16, was refiled, incorporating the restrictive covenants recorded in book 412 at page 366. The plat for Phase III was recorded in the land records in 1994. Unlike the plat for Phases I and II, the plat for Phase III did not incorporate any restrictive covenants.
¶ 3. Phase III includes Lots 1-12. Rather than filing restrictive covenants applicable to all of Phase III, as they did with Phases I and II, the Leavells included various restrictive covenants with each individual deed on Phase III lots that they sold. Several of the deeds contained the same restrictive covenants applicable to all of Phases I and II. All of the deeds for Phase III contained covenants that restricted use of the property to “residential” use, but at least six of these deeds originally had covenants that defined residential use to include churches and schools.
¶ 4. In 2006, the Harlands began looking for land on which a church could be built, and they approached the Leavells about purchasing three adjacent lots in Phase III of Long Meadow. They intended to purchase the land and transfer it to their church, Oxford Church of Christ. The Leavells were aware of the Harlands’ intention to have a church built on the property. This was reflected in their option contract dated November 2006, which included the following contingency:
The purchase of this property is contingent upon approval being obtained to build a church and a parking lot. The parties will mutually agree to cooperate in obtaining a release of the property from the subdivision restrictions which prohibit the building of a church. If a church cannot be built on the property, that is to say if this permission to build a church has not been obtained by May 15, 2007, this contract is voidable at the option of the Purchasers and the $5,000.00 earnest money will be returned.
¶ 5. In early 2007, residents of Long Meadow learned of the Harlands’ plan to build a church on the property. The Long Meadow Homeowners’ Association informed the Leavells, the Harlands, and the elders of the Oxford Church of Christ that they objected to a church being built in the subdivision, claiming that the covenants did not allow for such. In spite of the landowners’ objection, the Leavells and the *576 Harlands proceeded with the transaction, and the Leavells conveyed Lots 2, 3, and 4 in Phase III to the Harlands on March 13, 2007. The Harlands’ deed for Lots 2, 3, and 4 included covenants that restricted the use of the property to “residential,” but defined residential use to include churches and structures used for church purposes. The deed was recorded in the land records on May 22, 2007.
¶ 6. More than a year later, in May 2008, counsel for the Long Meadow Homeowners’ Association prepared a “corrected” warranty deed for the Harlands’ property. This deed included the same restrictive covenants applicable to Phases I and II, which allowed only one single-family, residential structure for each four acres. Without obtaining the Harlands’ consent or approval, the Homeowners’ Association filed their “corrected” warranty deed in the land records on July 15, 2008.
¶ 7. After learning of this, the Harlands filed suit in the Chancery Court of Lafayette County against the Leavells,[2] the Long Meadow Homeowners’ Association, and certain landowners in the subdivision (collectively the “Long Meadow Defendants”). The Harlands sought to vacate Lots 2, 3, and 4 from the official plat of Long Meadow subdivision and requested a determination that those lots would not be subject to any restrictive covenants otherwise pertaining to the subdivision. In the alternative, the Harlands requested a declaratory judgment validating the original protective covenants included in their deed, which allowed a church to be constructed on the subject property. The Harlands also requested that the “corrected” warranty deed be set aside.
¶ 8. The Long Meadow Defendants asserted the defense of equitable estoppel, inter alia, against the Harlands. They also asserted a counterclaim against the Harlands and a cross-claim against the Leavells, requesting a declaratory judgment that the protective covenants recorded for Phase I, Phase II, and certain lots in Phase III were valid and binding as to all lots in Phase III, such that only one single-family dwelling could be constructed on any lot in all phases of Long Meadow. The chancellor ruled in favor of the Har-lands, holding valid the covenants included within the original conveyance and setting aside the “corrected” warranty deed. The Long Meadow Defendants appealed, and we assigned the case to the Court of Appeals.
¶ 9. The Long Meadow Defendants asserted the following issues before the Court of Appeals: (1) whether protective covenants imposed on Phase I and Phase II of the subdivision were applicable also to Phase III; (2) whether the court erred in refusing to estop the Harlands from building a church on the property; (3) whether the court erred in granting the Harlands’ motion to set aside the corrected warranty deed; and (4) whether the court erred in holding that the covenants filed with the original deed were valid. Long Meadow, 89 So.3d at 593-94 (¶ 2). The Court of Appeals affirmed the chancery court’s judgment. Id The Long Meadow Defendants filed a petition for writ of cer-tiorari, which this Court granted.
ISSUE
¶ 10. The Long Meadow Defendants raise only one issue in their petition for certiorari. They claim that the chancery court and the Court of Appeals failed to consider the testimony of certain landowners in light of this Court’s precedent in PMZ Oil Co. v. Lucroy, 449 So.2d 201 (Miss.1984), and White Cypress Lakes De *577 velopment Corp. v. Hertz, 541 So.2d 1031 (Miss.1989).
STANDARD OF REVIEW
¶ 11. The Supreme Court reviews the trial court’s findings of fact under the manifest-error/substantial-evidence standard. Russell v. Performance Toyota, Inc., 826 So.2d 719, 721 (Miss.2002). “This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Sanderson v. Sanderson, 824 So.2d 623, 625-26 (Miss.2002) (quoting Kilpatrick v. Kilpatrick, 732 So.2d 876, 880 (Miss.1999)). This standard does not apply to questions of law, which are reviewed de novo. Russell, 826 So.2d at 721 (internal citations omitted).
DISCUSSION
¶ 12. “The law does not regard estoppels with favor, nor extend them beyond the requirements of the transactions in which they originate.” PMZ Oil Co. v. Lucroy, 449 So.2d 201, 206 (Miss.1984) (quoting McLearn v. Hill, 276 Mass. 519, 177 N.E. 617, 619 (1931)). Equitable es-toppel has been described as a “shield and not a sword.” First Investors Corp. v. Rayner, 738 So.2d 228, 233 (Miss.1999). It is an extraordinary remedy and should be applied cautiously and only when equity clearly requires it to prevent unconscionable results. B.C. Rogers Poultry, Inc. v. Wedgeworth, 911 So.2d 483, 491 (Miss.2005). It is to be applied only in “exceptional circumstances and must be based on public policy, fair dealing, good faith, and reasonableness.” Powell v. Campbell, 912 So.2d 978, 982 (Miss.2005); Windham v. Latco of Miss., Inc., 972 So.2d 608, 612 (Miss.2008). “[T]he principle giving rise to the remedy of equitable estoppel is that a wrongdoer is not entitled to enjoy the fruits of his fraud.” Windham, 972 So.2d at 611.
¶ 13. The Long Meadow Defendants claim that they relied on the representations of the Leavells that all of Long Meadow Subdivision would be single-family residential. They claim that these representations induced them to buy property in Long Meadow and that they would not have purchased property but for these representations. Furthermore, the Long Meadow Defendants claim that they will suffer harm if the Harlands are allowed to build a church in the subdivision.
¶ 14. To support their claim, the Long Meadow Defendants rely principally on the testimony of landowners James Propes and Alan Cameron, who purchased property from the Leavells in 1995 and 2001, respectively. Each of these landowners testified at trial that he was given assurances that the entirety of the Long Meadow subdivision would be residential. However, the plat for Phase III was filed in 1994, before either Propes or Cameron bought land in Long Meadow. The Phase III plat contained no restrictive covenants, unlike the plats for Phases I and II. Propes and Cameron, then, were on notice that the entirety of the Long Meadow subdivision was not restricted to single-family residential use. See Hathorn v. Ill. Cent. Gulf R. Co., 374 So.2d 813, 817 (Miss.1979) (individuals are held to constructive notice of land records) (citing Staton v. Bryant, 55 Miss. 261 (1877)). While the landowners reasonably could have expected that Phases I and II would be restricted to single-family dwellings, they were on notice that such restriction did not extend to Phase III.
¶ 15. The Long Meadow Defendants and the dissent cite this Court’s decisions in PMZ and White Cypress Lakes to support their argument. The Court of Ap *578 peals did not address these cases in its opinion. While the cases are significantly distinguishable from the facts before us today, we feel compelled to discuss these holdings and their applicability, vel non, to the Long Meadow Defendants’ claim of equitable estoppel.
¶ 16. In White Cypress Lakes, subdivision homeowners brought an action against a development company to prevent the construction of a campground for recreational vehicles in the White Cypress Lakes subdivision. White Cypress Lakes, 541 So.2d at 1038. The developer intended to build the campground in Phases V and VI of the subdivision. Id. The plats for these phases and every phase in the subdivision prohibited any use of the property other than single-family residential. Id. Further, the covenants applicable to Phases V and VI specifically prohibited the use of any camping vehicles on the property. Id. at 1034. This Court held that the covenants prevented the type of use the developer intended and estopped the developer from building the campground. Id. at 1035-36. The Court held that the complaining landowners were merely “insisting] upon adherence to a covenant which is now as valid and binding as at the hour of its making.” Id.
¶ 17. White Cypress Lakes is clearly distinguishable from the present case. The plat for Phase III of Long Meadow subdivision and the deed by which the Harlands received title did not prohibit the use intended by the Harlands. As such, White Cypress Lakes is inapplicable to the facts before us today.
¶ 18. PMZ is more factually analogous, but it also is distinguishable. In PMZ, home builders sought to prevent a developer from building six townhouse condominiums, claiming that the developer had assured all homeowners that the subdivision would be restricted to single-family dwellings. PMZ, 449 So.2d at 202. The plat for the land at issue in PMZ was not recorded. Id. at 203. However, the developer had included the same restrictive covenants in every deed issued to a third party, before attempting to deviate from these covenants. Id. at 207-08. Based on these facts, the Court affirmed the chancellor’s enforcement of estoppel against the developer. Id. at 208.
¶ 19. While every deed issued by the developer in PMZ contained the same restrictive covenants, in today’s case, as early as 1988, a deed for a lot in Long Meadow subdivision Phase III was issued without the “single-family only” restriction, contrary to the subsequent representations upon which the defendants allegedly relied.[3] Then, from 2004 to 2007, several deeds were issued that allowed for construction of buildings other than single-family dwellings in Phase III.
¶ 20. Finally, in both PMZ and White Cypress Lakes, equitable estoppel was being asserted against the developers of the property at issue. In the present case, the Long Meadow Defendants are attempting to estop the Harlands, the grantees of a deed, from building a church — a use which the Harlands’ deed allows. The Harlands made no representations upon which the Long Meadow Defendants allegedly relied. See Minard v. ITC Deltacom Commc’ns, Inc., 447 F.3d 352, 358 (5th Cir.2006) (“[T]he party claiming the estoppel must have relied on its adversary’s conduct ....”) (emphasis added) (citing Heckler v. Cmty. Health Services of Crawford County, Inc., 467 U.S. 51, 59 n. 9, 104 S.Ct. *579 2218, 81 L.Ed.2d 42 (1984)). This Court has stated that equitable estoppel is appropriate where it would be “substantially unfair to allow a party to deny what he has previously induced another to believe and take action on.” PMZ, 449 So.2d at 207. The unfairness that courts have sought to prevent through equitable estoppel is simply not present here, where the Harlands have made no representations to the Long Meadow Defendants that they now seek to deny, nor have they induced the Long Meadow Defendants to take any action.
¶21. The dissent mistakenly suggests that the effect of our decision today “is that covenants have no validity.” Carlson, P.J., dissenting, ¶ 58. In fact, our decision achieves the opposite. Our decision holds valid the covenants applicable to the Har-lands’ land. What we refuse to do is place restrictions on property in addition to those that the applicable covenants provide. The effect of the dissent’s approach would be to allow one landowner to impose the covenants on his lot to all other lots in a subdivision, regardless of what the land records applicable to those lots contained. We simply cannot endorse such an approach. See Goode v. Village of Woodgreen Homeowners’ Ass’n, 662 So.2d 1064, 1074 (Miss.1995) (“The law in Mississippi favors the free and unobstructed use of real property.”).
¶22. The Harlands relied not only on oral representations but also on the land records for Long Meadow. These land records did not prohibit the construction of a church in Phase III. Furthermore, the Harlands negotiated for and received a deed that specifically allowed for the construction of a church on the lots purchased. Confirming the Harlands’ purchase will not work “unconscionable results,” as the Long Meadow Defendants’ argument necessarily indicates. See Wedgeworth, 911 So.2d at 491 (equitable estoppel should be used only to prevent unconscionable results). While the Long Meadow Defendants may have “relied” upon the representations made by the Leavells or their agents, this case does not present an “exceptional circumstance” where estoppel is the “most fair and reasonable remedy” and is necessary to “prevent unconscionable results.” See Wedgeworth, 911 So.2d at 491; Powell, 912 So.2d at 982.
CONCLUSION
¶ 28. For the above reasons, the chancellor did not abuse his discretion in denying the Long Meadow Defendants’ equitable-estoppel claim. Accordingly, we affirm the judgments of the chancery court and the Court of Appeals.
¶ 24. AFFIRMED.
DICKINSON, P.J., RANDOLPH, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. CARLSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. LAMAR AND KING, JJ., NOT PARTICIPATING.

. The lots are numbered 1-46, with Lot 13 deleted. Lots 25, 27, and 28 were each divided into two lots, being Lots 25A, 25B, 27A, 27B, 28A, and 28B, resulting in a total of forty-eight lots.

. The Leavells did not respond to the Complaint or to any subsequent pleadings.

. David Pryor purchased Lot 1 in 1988, and the recorded deed permitted a single- or double-family residence.